17772

Annie OUTLAW, Respondent, v. CALHOUN LIFE INSURANCE COMPANY, Appellant

(119 S. E. (2d) 685)

*Messrs. John Gregg McMaster,* of Columbia, and *William R. Gettys,* of Camden, *for Appellant,*

*Messrs. Murchison, West & Marshall,* of Camden, *for Respondent,*

May 1, 1961.

TAYLOR, Acting Chief Justice.

This appeal arises out of an action for fraud and deceit in inducing respondent, Annie Outlaw, to execute to defendant, Calhoun Life Insurance Company, a final release and discharge of obligation and liability under an insurance policy issued by the defendant upon the life of plaintiff's son, Stephen L. Edenfield.

Plaintiff alleged in her complaint that defendant had issued its policy on the life of her son, Stephen L. Edenfield, in which she was the beneficiary and which provided for payment of $409.00 in the event of insured's death and $818.00 should he die by accidental means; that her son met death by accidental means in July, 1958; that the agents of the defendant by overreaching, decit, and fraud procured from her a final release by giving her the impression that she was executing a receipt for the full amount due under

the policy for the accidental death of her insured son; that after executing the release she saw for the first time that the draft was for $409.00 instead of $818.00. Plaintiff demanded judgment for actual and punitive damages.

The defendant answered by generally denying all allegations except those specifically admitted. It was further alleged by way of answer that an investigation disclosed that the insured son was intoxicated on July 23, 1958, when he fell from a moving automobile and sustained the injuries from which he subsequently died on July 26, 1958; and that under the terms of the policy, accidental death benefits were not payable if death resulted from injuries sustained while intoxicated; that these facts were made known to the plaintiff who was only entitled to $409.00 which had been paid.

Upon trial, the jury awarded plaintiff $409.00, actual damages, and $3,000.00, punitive damages. Timely motions were made for a nonsuit and judgment *n. o. v.*

This case has previously been before this Court by way of appeal from Order overruling defendant's demurrer, see *Outlaw v. Calhoun Life Insurance Company,* 236 S. C. 272, 113 S. E. (2d) 817, 818, in which this Court stated:

"In an action for fraud and deceit, the plaintiff, in order to state a good cause of action, must allege (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) his intent that it should be acted upon by the person; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury. *Jones v. Cooper,* 234 S. C. 477, 109 S. E. (2d) 5, and *Mishoe v. General Motors Acceptance Corporation,* 234 S. C. 182, 107 S. E. (2d) 43."

One who charges another with fraud and deceit as a basis for a cause of action must establish such by clear, cogent, and convincing evidence, *Griggs v. Griggs,* 199 S. C. 295, 19 S. E. (2d) 477; and the failure

to prove any of the elements necessary to support an action for fraud and deceit will prevent recovery, *Able v. Equitable Life Assur. Society*, 186 S. C. 381, 195 S. E. 652; *Mishoe v. General Motors Acceptance Corporation, supra.*

Respondent, 78 years of age, stated that she has a fifth grade education and had been doing sewing "to help out." That approximately one month after her son's death, on the 8th of September, a Mr. Baxley and a Mr. Catoe, representatives of the Calhoun Life Insurance Co. came to see her at her home. Mr. Baxley stated: "I have got here with your check at last" and placed the check upon a table, face down, with his hat over it. The release was placed upon the table, face up, with the statement: "Now, this is showing that you are getting your check"; and plaintiff signed the release where indicated and was given the check. Thereafter, she discovered that the check was for $409.00 and not for $818.00 as it would have been in case of double indemnity; that she called this to the attention of Mr. Baxley and he replied: "He was drunk"; that she offered to return the check but he refused; that she had no other conversation with him before signing; that she could read but made no attempt to do so before signing the release or to have either of the three persons present, including her niece, do so or to explain it to her. Plaintiff testified that the check was under Baxley's hat, but she at no time testified that the release, which plainly set forth the amount as being $409.00 and which she signed, was obscured in any way or that any false statements were made by defendant's agents to induce her to sign. On the contrary, she testified she signed it without reading it and asked no questions thereabout "because I thought he was a gentleman." After defendant's representatives, Baxley and Catoe, left, she carried the check to the kitchen where she showed it to her niece. Plaintiff at no time testified that any false representation had been made by defendant's agents to induce her to sign. From her own testimony, she signed of her own accord. She accepted the check on September 8, 1958, endorsed and

deposited it shortly thereafter in the Building and Loan in Camden, where it remained until more than three months later, December 16, 1958. On December 18, 1958, she offered to return the money to the defendant company by way of a Building and Loan check in the amount of $409.00. We are of opinion that plaintiff failed to prove by clear, cogent, and convincing evidence that defendant's representatives knowingly made false representations to plaintiff with the intent that she act thereon to her injury. The only representation they made was "Now, this is showing that you are getting your check," which was not a false representation as the signed instrument was denominated "Claimants Receipt and Release."

In the first appeal in this case, this Court stated that "We adhere to the rule that one cannot complain of fraud in the misrepresentation of the contents of a written instrument signed by her, when the truth could have been ascertained by reading the instrument, and one entering into a written contract should read it and avail herself of every opportunity to understand its content and meaning."

The testimony of plaintiff's niece varies in some particulars from that of plaintiff; but plaintiff's case, based upon fraud and deceit, must stand or fall upon the facts as she conceived them to be and not that of some third party.

Appellant also charges error in that the trial Judge charged the jury that "the defendant must also prove to you that if, at the time of the accident, the deceased was intoxicated, that the intoxication of the deceased must have been the direct and proximate cause of the death of the deceased, and those things must be proved by the defendant by the greater weight or preponderance of the evidence." The provision of the policy with respect thereto appears as follows: "The agreement to pay accidental death benefits hereunder shall be null and void if death shall have resulted from bodily injuries sustained by insured while intoxicated * * *."

Appellant specially objects to that portion of the charge which requires it to show that the intoxication of deceased was the direct and proximate cause of the death of the insured.

This identical question has not heretofore been before this Court; however, the reasoning of the Court employed in interpreting the effect of other provisions of insurance policies will shed some light upon the question.

Sec. 37-471.25, Code of Laws of South Carolina, 1952, 1960 Cumulative Supplement, which deals with insurance provisions as to intoxicants and narcotics, subject to Secs. 37-471.3 and 37-471.26, states:

"Intoxicants And Narcotics. The insurer shall not be liable for any loss sustained or contracted in consequence of the insured's being intoxicated or under the influence of any narcotic unless administered on the advice of a physician."

In *Deadwyler v. Grand Lodge K. of P. Etc.*, 131 S. C. 335, 126 S. E. 437, this Court refused to give a strict construction to the provision in an insurance policy which provided: "Any member meeting death as a result of intemperance or immoral conduct, or by suicide, shall not be entitled to the benefit provided in case of death." The Court concluded in effect that where a set of facts is susceptible of more than one interpretation, the policy should be construed for the benefit of the insured, and sustained a directed verdict for plaintiff.

In 13 A. L. R. (2d) 999, Sec. 9, we find that:

"In a substantial number of cases the question has arisen as to what degree of intoxication of the insured must be shown by the insurer in order to relieve it from liability under the exclusion clause. In all cases involving one of the usual clauses excluding liability for injury or death 'while intoxicated,' 'while under the influence of intoxicating liquor,' or occurring 'in consequence of being affected by intoxicants,' a mere showing that the insured has drunk intoxicating liquor before his injury or death is not sufficient, the

general rule being that the terms refer to such a degree of intoxication as will impair the insured's judgment and faculties. The reason for such interpretation obviously is that the insurer should not be permitted to avoid liability in cases in which its risk has not actually been augmented.

"It is only where the exclusion clause is so phrased as not to permit of any interpretation that the courts have held that the slightest amount of intoxicating liquor in the insured's body is sufficient to avoid the policy. This type of clause, which is of relatively recent origin and which probably has been invented by the insurance companies for just this reason, excludes liability if the insured at the time of his injury or death has physically present in his body any intoxicating liquor. While this clause, if the courts continue to interpret it literally, may work a certain injustice in individual cases, it should not be overlooked that, at the same time, it will also lighten considerably the frequently insurmountable burden of the insurer of proving that the insured was so intoxicated as to suffer an impairment of his mental and physical faculties."

In *Reynolds v. Life & Casualty Insurance Co. of Tennessee,* 166 S. C. 214, 164 S. E. 602, 603, this Court had under consideration the double indemnity provision of a policy which limited liability for death of insured whle the insured was committing "some act in violation of law", it beng contended that insured at the time of injury was violating a City Ordinance which provided that "No person shall be allowed to ride upon the running board of any motor vehicle * * *." In resolving this question, this Court stated:

"* * * the court properly refused defendant's motion, for, even if it should be admitted that the insured was violating the ordinance at the time he was injured, this alone would not be sufficient ground for direction of verdict. In order to defeat recovery under policies excluding or limiting liability where death or injury results from an unlawful act on the part of the insured, there must be shown, in addition to the violation of the law, some causative connection between such act and the death or injury. This is the general rule.

"In *Insurance Co. v. Bennett,* 90 Tenn. 256, 267, 16 S. W. 723, 725, 25 Am. St. Rep. 685, the Tennessee court, construing a provision of this kind in an insurance policy, said: 'In order to defeat a recovery because of such provision, there must appear a connecting link between the unlawful act and the death. It is not sufficient that there was an unlawful act committed by the insured, and that death occurred during the time he was engaged in its commission. There must be some causative connection between the act which constituted a violation of the law and the death of the insured. * * *' The provision of the policy excluding liability for injury received by the insured while committing an unlawful act refers to such injuries as may happen as the necessary or natural consequence of the act.

"And so in *Bradley v. Mutual Ben. Life Insurance Co.,* 45 N. Y. 422, 6 Am. Rep. 115. 'Whatever be the nature of the violation of law urged by the insurance company, as avoiding the policy, it seems to be clear that a relation must exist between the violation of law and the death, to make good the defense; that the death must have been caused by the violation of law to exempt the company from liability.' "

Thereafter in *Young v. Life & Casualty Insurance Company of Tennessee,* 204 S. C. 386, 29 S. E. (2d) 482, 484, 485, this Court had under consideration an exclusion clause relating to the insured being "enrolled" in military service and used the following language:

"In the case before us, we think it clear that although the policy contains the word 'enroll' and not 'engage,' it was intended by the parties, insured and insurer, that the failure of the insured to obtain the permit and pay the extra premium would reduce the company's liability only in case his death should result from a risk peculiar to the military service. This view is strengthened by the requirement that an extra premium be paid in the event of military service in time of war. It is evident that an extra hazard was in contemplation of the parties as a possible cause of death, and that for this added risk the Company should be compen-

sated. This added risk, in our view, cannot reasonably be referred to status; it relates to the death of the insured caused by or connected with his military duties as a member of the nation's armed forces. This seems to us to be the natural and obvious reading of the clauses quoted.

\* \* \*

"We have denied the status theory in previous cases involving insurance clauses. In *McGee v. Globe Indemnity Co.,* 173 S. C. 380, 175 S. E. 849, 850, it was held that a provision in a policy indemnifying the owner of an automobile against loss or damage to his car, which should not apply while the car was used by any person in violation of law as to age, or by any person under the age of 16 years, did not relieve the insurer of liability for an accident, although the operator of the car at the time was under 16 years of age. The Court held that in addition it must be shown that a causal connection existed between the age of the driver and the accident.

"In the *McGee case, supra,* the insurer specifically raised the question of status or condition. The Court stated with reference to this contention: 'We are of the opinion that the distinction advanced between the excluded act and condition is without any logical basis. \* \* \* The rule established by the *Reynolds case (Reynolds v. Life & Casualty Ins. Co.,* 166 S. C. 214, 164 S. E. 602) is obviously founded upon the reasonable view that, when the parties made the contract of insurance, they were not inserting a mere arbitrary provision, but that it was the purpose of the insurance company to relieve itself of liability from accidents caused by the excluded condition.' "

In instant case there is testimony that on the night of injury, deceased fell from a car while his wife was driving; that "he had been drinking some, but not enough that you could tell it. \* \* \* He was drinking \* \* \*, but he was nowhere near drunk." Another witness stated that there were two men in the car when she approached it for the purpose of serving its occupants, at a drive-in, that one was "pretty

high" and one was sober but that she did not know the deceased, Edenfield, and was unable to say whether he was the one "high" or sober. Another witness testified that deceased had drunk some beer but "He was not drunk when I was with him."

It is uniformly held that the burden is on the insurer to prove that the insured died under conditions which made his death a risk not assumed by the policy, 13 A. L. R. (2d) 1013, Sec. 16, and Annotations thereunder. See also Insurance Law and Practice, Appleman Vol. 21, Sec. 12176, page 84, "Intoxication".

As a general rule where there is a conflict of evidence as to whether the assured was within the exception clause against the use of intoxicating liquors the question is for the jury, and its finding will not be reviewed by an appellate court unless a serious and important mistake appears to have been made in consideration of the evidence or an obvious error has intervened in the application of the law, 13 A. L. R. (2d) 1014, Sec. 17, and Annotations thereunder.

The decisions are far from uniform on the question of under what circumstances the Courts will assume that the insured was so intoxicated within the meaning of the exception clause as to exonerate the insurer from liability for his injury or death, 13 A. L. R. (2d) 1015, Sec. 18, and Annotations thereunder, but we agree with that line of decisions which holds that an exclusion clause in an insurance contract with respect to intoxication will not be permitted to prevent recovery unless the insurer is able to show by the greater weight or preponderance of the evidence some causal connection between insured's condition and his injury or death.

For the foreging reasons, we are of opinion that there is no error in the Judge's charge and the verdict for $409.00, actual damages, should be affirmed but that the verdict for

punitive damages should be reversed; and it is so ordered. Affirmed in part; reversed in part.

OXNER, LEGGE and MOSS, JJ., and STEVE C. GRIFFITH, Acting Associate Justice, concur.