OLD EQUITY LIFE INSURANCE COMPANY, Appellant,

v.

Harmon "Dock" COMBS, Administrator, et al., Appellees.

Court of Appeals of Kentucky.

Jan. 31, 1969.

Richard C. Ward, Reeves, Barret, Cooper & Ward, Hazard, for appellant.

Dan T. Martin, Cordell H. Martin, Robert Greene, Hindman, Albert A. Burchett, Martin, Charles A. Taylor, Perry & Taylor, Paintsville, for appellees.

STEINFELD, Judge.

Kelly Combs, age 29, single and in excellent health lived with his father, Harmon "Dock" Combs. He was employed in the logwoods by William F. Rice but was not related to Rice by blood or marriage. On the 3rd day of August, 1964, pursuant to a telephone call from Rice, Seldon Endicott, who was a solicitor for the James Pigg Insurance Agency, the general agent for Old Equity Life Insurance Company (hereinafter Equity), went to the Rice home. Present were Rice, Mrs. Rice and another man unknown to Endicott. At the direction of Rice, Endicott prepared an Equity application for a $10,000.00 life insurance policy on Kelly. From a paper possessed by Rice he informed Endicott of Kelly's age, height and weight and Rice answered all other questions on the application. Rice was named the beneficiary. Endicott signed Kelly's name on the application. Upon completion of the application Rice paid the premium of $12.05. The policy was issued on August 10, 1964, and Kelly was killed on September 15, 1964, while not working and under circumstances which we shall discuss later.

Taking the position that Rice had surrendered to Kelly's administrator all of his rights under the policy, claim was made by the administrator for the death benefits. Equity declined to pay on the ground that fraud had been exercised in procuring the policy, that it was "void Ab Initio for lack of any insurable interest on the part of the beneficiary", and that certain exclusions made it unenforceable. The administrator sued, Rice intervened and Equity cross-claimed against Rice.

After obtaining permission and pursuant to CR 14.01 the insurance company filed a third-party complaint against Endicott demanding that it have judgment against Endicott for any sums that might be adjudged against it. On trial before a jury verdict was rendered in favor of the administrator. The court adjudged that the administrator should recover $10,000.00 from Equity together with interest thereon and it dismissed all cross and third-party claims. Motions for a new trial and for judgment notwithstanding the verdict were made and overruled. The insurance Company appeals and Rice cross-appeals.

Equity contends that the policy "* * * was a nullity" and that "* * * there was fraud in the procurement of same."

Complaint is made that the application showed that Kelly Combs was married which was incorrect. Appellant relies upon Commonwealth Life Ins. Co. v. Spears, 219 Ky. 681, 294 S.W. 138 (1927), in which false answers were given. Appellant also contends that there was collusion between the agent and the beneficiary and it cites Prudential Ins. Co. v. Lampley, 297 Ky. 495, 180 S.W.2d 399 (1944); Kelly Contracting Co. v. State Automobile Mut. Ins. Co., Ky., 240 S.W.2d 60 (1951).

The policy provided that:

"INTOXICANTS AND NARCOTICS. The Insurer shall not be liable for any loss sustained or contracted in consequence of the Insured's being intoxicated or under the influence of any narcotic unless administered on the advice of a physician."

Such provisions are not contrary to public policy. Heltsley v. Life & Casualty Ins. Co., 299 Ky. 396, 185 S.W.2d 673 (1945). See annotation 13 A.L.R.2d 989. However, in order to avoid liability the insurance company had the burden of showing that the insured was intoxicated to a degree that his judgment and coordination were impaired. "It is uniformly held that the burden is on the insurer to prove that the insured died under conditions which made his death a risk not assumed by the

policy, 13 A.L.R.2d 1013, Sec. 16, and Annotations thereunder. See also Insurance Law and Practice, Appleman, Vol. 21, Sec. 12176, page 84, 'Intoxication'." Outlaw v. Calhoun Life Ins. Co., v. 238 S.C. 199, 119 S.E.2d 685 (1961). The insured must have been in a "condition amounting to intoxication." Campbell v. Fidelity & Casualty Co. of New York, 109 Ky. 661, 60 S.W. 492 (1901). If the proof was conflicting a jury question was presented, otherwise, it should have been determined by the court. 53 Am.Jur. Trial, Section 158, page 144; 53 Am.Jur.Supp. Trials, Section 158, page 32. Equity contends that there was no conflict in the evidence and that it showed "the insured at the time of his death was staggering and blackguarding" and that he was drunk. The drunkenness is denied by the claimants to the proceeds of the policy.

■ A friend of Kelly's testified that he was with him at 9:00 a. m. and that they were drinking moonshine whiskey from a quart jar but the amount of the drinking was not indicated. A bottle of moonshine whiskey was removed from Kelly's pocket after his death. He said that he saw the insured staggering down the road shortly before he was killed. In an attempt to counter, testimony was introduced which showed that the undertaker, who did not examine the body until four or five hours after death occurred, stated that he did not smell any alcohol on the deceased; however, the undertaker admitted that after a person had been dead that long alcohol would not necessarily be detected. Another witness said that sometimes Kelly feigned drunkenness through pretense. There was no testimony that Kelly was pretending to be drunk at the time of his death.

Marjorie Watkins, age 17, testified that Kelly came to her residence; that she told him to stay out; nevertheless, he entered and he tried to get a shotgun from the kitchen wall. She said that Kelly threatened to kill her. He threw chairs at her but she held him off with a hammer which she had been using to crack walnuts for the two young children who were there. She hollered for her mother, Genedith Watkins. Genedith came from the garden to the house and Kelly cursed all of them, "said he was going to kill every one of us". Genedith got him out of the house onto the porch. There he threw chairs at her and continued his threats to kill all of them. When he stooped over to get another chair she shot him. This all occurred about 2:30 p. m. It is apparent to us from the testimony of drinking, staggering and his irrational acts that he was intoxicated and that he lost his life in consequence of being in that condition. The policy having provided that the company should "not be liable for any loss sustained or contracted in consequence of the Insured's being intoxicated," the motion for a directed verdict (CR 50.-01) made at the conclusion of all the evidence on that ground should have been sustained. Woodmen of World Life Ins. Soc. v. Parish, 290 Ky. 141, 160 S.W.2d 629 (1942). There was no jury issue. Cf Campbell v. Fidelity & Casualty Co. of New York, supra; Shader v. Railway Passenger Assurance Co., 66 N.Y. 441, 23 Am.Rep. 65. Annotation 13 A.L.R.2d 987 (1876).

In view of this ruling it is unnecessary for us to pass on the other issues raised by the parties.

The judgment in favor of the administrator is reversed for the entry of a judgment dismissing this claim but in all other respects it is affirmed.

MONTGOMERY, C. J., and MILLIKEN, PALMORE and REED, JJ., concur.

HILL, J., not sitting.