[No. 1160-2.   Division Two.   July 17, 1974.]

NOLA J. RIORDAN, *Respondent*, v. THE COMMERCIAL TRAVELERS MUTUAL INSURANCE COMPANY, *Appellant.*

*Coleman P. Hall* and *Karr, Tuttle, Koch, Campbell, Mawer & Morrow,* for appellant.

*Jackie L. Ashurst* and *Preston, Thorgrimson, Ellis, Holman & Fletcher,* for respondent.

ARMSTRONG, J.—The major issue presented in this appeal is one which has not previously been addressed by the appellate courts of this state. We are called upon to interpret an exclusionary clause in an accident-health insurance contract which expressly excepts from coverage any loss occurring or originating while the insured is intoxicated. The question presented is whether such a clause is applicable where the event which produced death or loss is not in any sense causally connected with the intoxication. We affirm the summary judgment of the trial court, determining as a matter of law that such an exclusionary clause does not preclude coverage where the loss and the alleged intoxication are entirely unrelated.

The facts in this case are not in dispute, having been stipulated by the parties. The insured, Edwin L. Riordan, died as a result of an automobile accident which occurred at approximately 5:30 p.m. on December 23, 1969. At the time of the accident, Mr. Riordan was a passenger in his

own automobile, which was being driven by John Kalina. Mr. Riordan and the driver of the car were returning home to Seattle after a business trip to Portland, Oregon. Prior to their return, Mr. Riordan had consumed alcoholic drinks along with dinner in Portland. An autopsy was performed which found Mr. Riordan's blood alcohol level to be .13 percent. It is estimated that he had been riding as a passenger for almost an hour and a half on the return trip before the accident.

The accident occurred after dark on an interstate highway near Chehalis, Washington. The cause of the accident was a truck with a low trailer standing across the highway in an intersection following an uncompleted left turn, and blocking both lanes of traffic in the direction the Riordan car was traveling. There was no negligence on the part of the insured or the driver of his car. The entire responsibility for the accident rested with the truck driver.

Commercial Travelers Insurance Company was given actual notice of the accidental death January 13, 1970, by a letter with a certified copy of the death certificate enclosed. The death certificate indicated that the fatal injuries occurred while the decedent was a passenger in an auto-truck collision, and under the caption "other significant conditions," the certificate further indicated that the insured's blood alcohol level was excessive. Pursuant to a provision in the insurance policy requiring that "affirmative proof of loss" be furnished to the company within 90 days following a loss, Mrs. Riordan's insurance agent, when he submitted the death certificate on January 13, 1970, also requested that the company send whatever forms were necessary for completion of Mrs. Riordan's claim. The company's proof of loss form, containing a certified attending physician's statement, was mailed to the company on March 23, 1970, the 90th day following the loss. On April 2, 1970, Commercial Travelers returned the proof of loss form and expressed its intention to deny Mrs. Riordan's claim, on the grounds that proof of loss was insufficient and untimely, and because the loss allegedly occurred under circumstances excluded from

coverage; *i.e.*, while the insured was intoxicated. Upon motion for summary judgment, the trial court ruled that Commercial Travelers did not have grounds upon which to deny Mrs. Riordan's claim, and the company challenges these rulings before this court.

The company's major contention is that the loss in this case occurred under circumstances excluded from coverage under the following provision of the insurance contract:

The insurance under this contract does not cover:

. . .

(3) Any loss occurring or originating:

. . .

(d) While he is intoxicated or under the influence of narcotics, unless administered on the advice of a physician.

When confronted with the undisputed fact that the sole cause of the accident in this case was the negligence of a third-party truck driver over whom the insured, as well as the nonnegligent driver of his car, had no control, and that the alleged intoxication of the insured was in no way related to the accident, the insurance company interposes that the above language of the exception clause makes no reference whatsoever to a causal connection between intoxication and the accident. Stated simply, the company contends that if an insured, after an evening of slight overindulgence in drink, were to retire to the relative safety of his own bed, perhaps to sleep away any lingering effects, and were to be fortuitously struck by a bolt of lightning in the middle of the night as he slept, then under the provisions of the clause in question, the insured's widow would be denied the benefits of the accidental death policy. This result is urged upon us despite the fact that the insured, as in the instant case, may have paid the policy premiums for many years under the not unreasonable belief that his widow would not be unprotected in the event of an untimely and entirely accidental death.

This court simply cannot countenance the construction of this exclusionary clause urged upon us by the insur-

ance company. Such a construction smacks of the application of caveat emptor against the purchaser of insurance policies—a position clearly untenable, so closely is the insurance industry affected with the public welfare. *See Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 332, 494 P.2d 479 (1972). Indeed, because of strong public policy in the insurance area, nearly a converse position to caveat emptor applies, for it has long been the rule in this state that exceptions from liability in accident insurance policies must be construed strongly against the insurance company, lest the exceptions unfairly devour the whole policy. The Supreme Court of our state, which has followed this rule since the turn of the century, has thusly stated:

> It is the established and universal law that insurance policies are to be construed in favor of the insured, and most strongly against insurance companies. This is a reasonable rule, considering the fact that these policies are prepared by men who are learned in the law and trained in preparing contracts of this kind, and who have studied the legal effects of all the multifarious provisions in the ordinary insurance policies, whether accident or life; while the insured are frequently men and women of limited understanding, of simple methods of thought, and who, as a rule, would not be capable of technically construing doubtful provisions in a contract.

*Starr v. Aetna Life Ins. Co.*, 41 Wash. 199, 203-04, 83 P. 113 (1905).

■■■■ In interpreting the meaning of the exclusionary clause in question, we are mindful of several well established principles. First, a clause or phrase cannot be considered in isolation, but should be considered in context, including the purpose of the provision. *See Hartford Accident & Indem. Co. v. Novak*, 83 Wn.2d 576, 585, 520 P.2d 1368 (1974); *State Farm Mut. Auto. Ins. Co. v. Phillips*, 2 Wn. App. 169, 177, 467 P.2d 189, 46 A.L.R.3d 1013 (1970). Second, the language of insurance policies is to be interpreted in accordance with the way it would be understood by the average man, rather than in a technical sense. *Zinn v. Equitable Life Ins. Co.*, 6 Wn.2d 379, 107 P.2d 921 (1940);

*Dairyland Ins. Co. v. Ward,* 83 Wn.2d 353, 517 P.2d 966 (1974). Finally, contracts of insurance are to be given a practical, reasonable and fair interpretation consonant with the apparent object and intent of the parties, and a strained or forced construction is to be avoided as well as a narrow or technical interpretation which will relieve the insurance company from liability fairly within the spirit of the policy. *Philadelphia Fire & Marine Ins. Co. v. Grandview,* 42 Wn.2d 357, 363, 255 P.2d 540 (1953).

Viewing the intoxication exclusion in this light, it is inconceivable to this court that an average man, noting the context to be a list of circumstances expressly made exceptions to coverage, would consider the clause in question to be other than a reasonable provision intended by the insurance company to relieve itself from liability *resulting from* the proscribed activities. One would not assume that the parties to the insurance contract were inserting a mere arbitrary provision. Such provisions obviously evidence that a greater risk or extra hazard was in contemplation of the parties. Thus the average man would logically and reasonably conclude that the only purpose of such a provision is to protect the insurer if the insured chooses to engage in proscribed high risk conduct and injures himself *because of the greater risk.* To posit that the intoxication exception was *intended* by the parties to apply in totally fortuitous, unforseeable and arbitrary circumstances is clearly unreasonable and unacceptable. Accordingly, we are in agreement with the line of decisions which holds that an exclusionary clause in an insurance contract with respect to intoxication will not be permitted to prevent recovery unless there is a causal connection between the insured's condition and his injury or death. *Harris v. Carolina Life Ins. Co.,* 233 So. 2d 833 (Fla. 1970); *Outlaw v. Calhoun Life Ins. Co.,* 238 S.C. 199, 119 S.E.2d 685 (1961); *Washington Fidelity Nat'l Ins. Co. v. Herbert,* 49 Ohio App. 151, 195 N.E. 492 (1934); *Bowers v. Great Eastern Cas. Co.,* 260 Pa. 147, 103 A. 536 (1918).

By way of analogy, we note that the opinion of the court

in *Outlaw v. Calhoun Life Ins. Co., supra,* contains an interesting collection of cases uniformly applying a similar interpretation to exclusionary clauses excepting from coverage losses occurring while the insured is violating any law, engaged in military service, or while an automobile is being driven by a person under age. In each instance it was held that a causal relation must exist between the specified extra risk activity and the injury in order to exempt the company from liability.

The insurance company asserts that to interpret the meaning of the exclusionary provision in question by engrafting a requirement that there be a causal connection between the accident and the intoxication involves a judicial rewriting of a clause in an insurance contract specifically allowed by certain provisions within the insurance code.[1] It is true that in 1951 insurance companies by statute were given a 5-year "grace period" during which

---

[1]The relevant statutory provisions are:

"48.20.162 Optional standard provisions. Except as provided in RCW 48.18.130, no such policy delivered or issued for delivery to any person in this state shall contain provisions respecting the matters set forth in RCW 48.20.172 to 48.20.272, inclusive, unless such provisions are in the words in which the same appear in the applicable section; except, that the insurer may, at its option, use in lieu of any such provision a corresponding provision of different wording approved by the commissioner which is not less favorable in any respect to the insured or the beneficiary. Any such provision contained in the policy shall be preceded individually by the appropriate caption or, at the insurer's option, by such appropriate individual or group caption or subcaption as the commissioner may approve.

"48.20.272 Optional standard provision No. 23—Intoxicants and narcotics. There may be a provision as follows:

"INTOXICANTS AND NARCOTICS: The insurer shall not be liable for any loss sustained or contracted in consequence of the insured's being intoxicated or under the influence of any narcotic unless administered on the advice of a physician.

"48.20.322 Effective date of standard provision and certain other sections—Five year period. The provisions contained in RCW 48.20.002 to 48.20.322, inclusive, shall take effect on September 1, 1951. A policy, rider or endorsement, which could have been lawfully used or delivered or issued for delivery to any person in this state immediately before such effective date may be used or delivered or issued for delivery to any such person during five years after such effective date."

policies could be issued with exclusionary clauses containing language such as that used in the policy involved in this dispute. After 1956, the legislature, in the exercise of the State's power to regulate insurance in the public interest, expressly directed that intoxication exclusions must be phrased in language clearly providing that the only losses excepted from coverage would be those "sustained or contracted *in consequence of* the insured's being intoxicated . . ." (Italics ours.) RCW 48.20.272. Since the insurance policy in question was written in 1953, during the grace period, the contention is that the exclusionary clause was legal and should be given effect even though the insured's death was not caused by intoxication. This argument misses the point. The policy provision in question, although phrased in language not prohibited until 1956, does not clearly and specifically tell the insured that the exclusionary provision applies to noncausally related losses, and we will not read such a meaning into the exclusionary provision in the face of what we perceive to be the interpretation of the clause compelled by the long recognized principles of construction discussed previously. We hold that the only reasonable interpretation of the exclusionary clause involved in this case is that the exclusion is only applicable where the event which produced death or loss is caused in some way by the intoxication.

Commercial Travelers' remaining assignments of error raise the question of whether the proof of loss submitted by Mrs. Riordan was timely and substantively adequate. Bearing upon the issue of timeliness, we observe that prior to the entry of the summary judgment awarding Mrs. Riordan the amount of the policy's death benefit, counsel for both parties to this action signed a written document entitled "Stipulated Facts," which provided, in part, as follows: "Formal proof of loss on defendant insurance company's form was timely given." It is difficult to understand why counsel for the insurance company would sign such a stipulation if the company seriously wished to contest this issue. Because of the stipulation we find it

unnecessary to address the question of whether proof of loss mailed, rather than furnished, within 90 days following the loss was timely. A written stipulation signed by counsel on both sides of the case is binding on the parties and the court. CR 2A; *Cook v. Vennigerholz,* 44 Wn.2d 612, 269 P.2d 824 (1954).

The insurance company's challenge to the sufficiency of the proof of loss submitted is based on the contention that Mrs. Riordan failed to comply with the company's printed form requirements that the proof include an attending physician's statement, witness' statement, and a coroner's report. The first contention is entirely unfounded, because a certified physician's statement was, in fact, furnished.

█ Regarding the witness' statement and coroner's report, the company concedes that an appropriate test for determining the sufficiency of proof is set forth in 14 R. Anderson, *Couch on Insurance* § 49:452, at 56 (2d ed. 1965):

> The sufficiency of proof is to be measured in terms of the two considerations that the claimant is required only to furnish such information as he can be reasonably expected to possess at the time, and that the purpose is to enable the insurer to determine whether it is liable under its policy.

(Footnotes omitted.) Furthermore, it is an established rule of law that the insurance company bears the burden of establishing a failure to submit due proof of loss. *Towey v. New York Life Ins. Co.,* 27 Wn.2d 829, 835, 180 P.2d 815 (1947).

We find nothing in the record of this case indicating that there were any witnesses to the accident capable of giving a statement and reasonably available to Mrs. Riordan. As to the coroner's report, the stipulated facts in this case recite that Mrs. Riordan was not notified of the autopsy, nor was her permission requested prior to it. Moreover, counsel for Commercial Travelers admitted in an affidavit that the requested autopsy report was not a public record normally available to the public, and there is nothing in the record to

716

indicate that the report was available any earlier than July 14, 1972, when the report was released by court order. Under these circumstances it is clear that Commercial Travelers failed to establish that the proof of loss submitted by Mrs. Riordan was insufficient.

The trial court having correctly determined upon summary judgment that Commercial Travelers did not have grounds upon which to deny Mrs. Riordan's claim, the judgment is hereby affirmed.

PEARSON, C.J., and PETRIE, J., concur.