FIRST OF DENVER MORTGAGE
INVESTORS and Citibank, N.A.,
Plaintiffs and Appellants,

v.

C. N. ZUNDEL AND ASSOCIATES, a
limited partnership, et al., Defendants
and Respondents.

FIRST OF DENVER MORTGAGE
INVESTORS, et al., Plaintiffs
and Respondents,

v.

C. N. ZUNDEL AND ASSOCIATES, a lim-
ited partnership, Bland Brothers, Inc., et
al., Defendants and Appellant.

Nos. 15696, 16051.

Supreme Court of Utah.

Aug. 24, 1979.

Richard H. Nebeker, Salt Lake City, for plaintiffs and appellants in 15696 and for plaintiffs and respondents in 16051.

J. Anthony Eyre, George H. Speciale, Milo S. Marsden, Jr., Albert J. Colton, Robert S. Howell, David H. Schowbe, Richard C. Davidson, Carvel R. Shaffer, Salt Lake City, George K. Fadel, Albert E. Mann, Bountiful, John H. Kelly, pro se., LeRoy S. Axland, Randy S. Ludlow, Salt Lake City, for defendants and respondents in 15696.

Robert C. Cummings, Salt Lake City, for defendants and appellant in 16051 and for defendants and respondents in 15696.

Gordon A. Madsen, Robert F. Orton, Salt Lake City, for defendants and appellants in 16051.

STEWART, Justice:

This appeal from the district court consolidates two separate but related proceedings. These proceedings involve the allocation of priorities between mortgagees foreclosing against real property in Davis County, Utah, and competing lien claimants who provided services and materials for improvements to the property.

Plaintiffs, First of Denver Mortgage Investors ("FDMI") and Citibank, N.A., were granted a judgment against defendant Mountain Springs by the trial court on December 20, 1977, in the amount of $2,358,396.08. The amount represented $1,558,005.51 in outstanding principal and $800,390.57 in interest. The judgment was secured by a lien on the Lakeview Terrace subdivision. The court's conclusions of law include the following:

4. Plaintiffs have stipulated in open court that they shall bid only the sum of one million nine hundred thousand for said property [at the sheriff's sale] and take no deficiency judgment against the defendant, Mountain Springs Construc-

tion Company, nor against any of the individual guarantors.

The Judgment and Decree of Foreclosure states:

The priority of the mechanic's and materialmen's liens is reserved for future determination and shall be set forth in a supplemental Judgment and Decree of Foreclosure to be entered prior to Sheriff's Sale.

The Decree further provides:

. . . that the proceeds of sale be applied in payment of the Sheriff's cost of sale and thereafter to the parties in accordance with the priority to be determined by the court . . . .

The court subsequently entered its order awarding priority to mechanics' liens claimed by eight defendants. The appeal from that order by plaintiffs is Case No. 15696 in this Court.

In a consolidated case, No. 16051, defendant Bland Brothers, Inc. ("Bland Bros.") appeals from the lower court's denial of its motion to set aside the sheriff's sale held pursuant to the foreclosure action and raises procedural issues in connection therewith. We shall examine first the common facts underlying these cases and then deal separately with the issues raised on appeal.

This litigation concerns a subdivision which originally comprised 44 acres in Bountiful, Utah, known as Lakeview Terrace subdivision. A trust deed was recorded as to this property on August 1, 1973, when plaintiff FDMI made a loan of $450,-000 to C.N. Zundel and Associates, a limited partnership. In November 1973 defendant Child Brothers, Inc. ("Child Bros.") commenced the first work on the property for C.N. Zundel. The work consisted of locating existing lines and putting in pipeline, water and sewer systems, and storm drains. Subsequently, the original FDMI loan was refinanced, and the 1973 trust deed released, with FDMI advancing $1,500,000 to Zundel and several limited partners. This amount was secured by a new trust deed recorded on February 19, 1974. The construction loan was for the financing of improvements on the 44–acre property, which was to comprise 54 single-family building sites and 69 condominium units. The loan was due and payable on January 15, 1976.

On August 8, 1975, Zundel conveyed the property to Mountain Springs Construction Company, whose stockholders were the same individuals who had been Zundel's limited partners. Because Zundel had become delinquent on the FDMI loan, FDMI on September 8, 1975, filed its first complaint for foreclosure. In November FDMI concluded a supplemental loan agreement with Mountain Springs, the successor to C.N. Zundel and Associates, which modified the construction loan so as to require repayment in installments in July 1976, October 1976, July 1977, and December 1977.

The following lien claimants first performed work on the Lakeview property for Mountain Springs on the dates indicated: Child Bros., November 15, 1973; Duncan Electric, January 22, 1975; Robert J. Wardrop, December 1, 1975; Countertop Shop, Inc., March 9, 1976; Max D. Scheel, April 19, 1976; Ronald Graham Tile Co., March 23, 1976; and Bland Bros., March 8, 1976. Additionally, Holt-Witmer provided wallpaper and linoleum under contract with Zundel commencing January 1, 1975. Except for Child Bros., the lien claimants all performed labor or furnished materials on various condominium units situated on the property.[1]

In June 1976 Child Bros., as credit in the approximate amount of $22,000 toward the sum owed by Zundel and Mountain Springs, accepted a check for $13,210 and a warranty deed to two lots in the subdivision. FDMI's trust deed provided that the title to the property deeded to Child Bros. would revert to FDMI if the required payment was not made by July 1, 1976. In exchange for the payment in cash and property, Child Bros. executed a release of all liens and

1. On June 13, 1979, orders of dismissal based on settlements between the parties were entered in this Court dismissing the following parties: Child Bros., Duncan Electric, Countertop Shop, and Holt-Witmer.

claims. The release was recorded on June 22, 1976.

Mountain Springs failed to pay the July 1976 installment on its note to FDMI. A partial assignment of the promissory note and trust deed from FDMI to Citibank, N.A., was recorded on July 30, 1976, and FDMI and Citibank on August 2, 1976, filed an amended complaint seeking foreclosure of the property. Mountain Springs answered, counter-claimed for damages, and filed a lis pendens against the property. One year later Child Bros. cross-claimed for money due and failure of warranty on the lots conveyed to it. Subsequently, the plaintiffs and the lien claimant defendants moved for summary judgment.

Following the December 20, 1977, hearing, plaintiffs were awarded a judgment against Mountain Springs; the question of lien priority was reserved for later determination. The sheriff's sale took place on January 19, 1978. Plaintiff FDMI bid $1,900,000 for the property; no higher bids were received. On January 24, the court entered a Memorandum Decision awarding the lien claimants first priority over the plaintiffs. That ruling involved total liens in the undisputed amount of $37,397.42. In making its ruling, the court in effect rejected a stipulation signed by attorneys for Child Bros. and FDMI on January 11, 1978, that Child Bros.' lien was junior to the trust deed. The provisions of the Memorandum Decision were embodied in the court's Order Granting Summary Judgment and Order Amending Certificate of Sale on February 1, 1978. Pursuant to this order, the sheriff's certificate of sale was amended to change plaintiff's bid to $1,937,397.42. On February 16, 1978, following the entry of a summary judgment in favor of lien claimant Holt-Witmer, the court entered another order requiring "that the sheriff's certificate of sale shall be amended to show that plaintiff's bid for the property is the sum of $1,944,732.86."

Child Bros.' cross-claim and counterclaims against Zundel, Mountain Springs, and plaintiffs were dismissed following a trial on February 1, 1978. Child Bros.' counsel was not present at the trial for reasons set out in an affidavit filed with Child Bros.' appellate brief.

On these facts, the plaintiffs FDMI and Citibank in Case No. 15696 seek reversal of the summary judgment dated February 1, 1978, awarding the named lien claimants priority over plaintiffs' trust deed.

Plaintiffs contend that liens for materials furnished for construction in Lakeview Terrace could not relate back to the date of the first work commenced on November 15, 1973, by Child Bros. for two basic reasons. First, plaintiffs characterize Child Bros.' work as "off-site improvements" and argue that liens arising subsequent to such improvements and after the recording of plaintiffs' trust deed which relate to specific structures cannot relate back to the date of the commencement of Child Bros.' work. Second, plaintiffs rely on Child Bros.' release of its claims to a lien for work performed prior to June 17, 1976. Plaintiffs further argue that the work done in October 1976 by Child Bros. was not under the same contract as work done previously by Child Bros. on Lakeview Terrace and was therefore, as stipulated by Child Bros., junior and subordinate to plaintiffs' trust deed.

Whether the lower court decided the question of lien priority properly depends on a consideration of several propositions of law underlying plaintiffs' contentions.

The first issue is whether the improvements by Child Bros. met the general statutory requirements under Utah law for the attachment of mechanics' liens. The Utah lien statute, § 38–1–3,[2] lists the following persons among those entitled to a mechanics' lien: "Contractors, subcontractors and all persons performing any services or furnishing any materials used in the construction, alteration, or improvement of any building or structure or improvement to any premises in any manner . . . ."

"The purpose of the lien statutes is to protect those who have added directly to the value of property by performing labor

---

2. All statutory references are to Utah Code Annotated (1953), as amended.

or furnishing materials upon it," *Stanton Transportation Co. v. Davis*, 9 Utah 2d 184, 187, 341 P.2d 207, 209 (1959). The broad language, "improvement to any premises in any manner," encompasses the instant case where sewer and water systems were installed on the subject property.

It is not necessary to the attachment of a mechanics' lien that the material or labor be furnished solely on a building structure or that the work be performed solely on the lot on which a building is being erected. We agree with the New Jersey Supreme Court, which stated in *J. R. Christ Construction Co. v. Willete Assocs.*, 47 N.J. 473, 221 A.2d 538 (1966), that a contractor should not be barred from enjoying the benefits of the mechanics' lien statute where his work not only enhances the value of the developer's land, but is also necessary to make residences to be built on such property habitable. The court held that where a developer engages the contractor to install a sewer system for a subdivision project, the contractor, if he complies with required statutory procedures, is entitled to a mechanics' lien against the developer's property for the cost of labor and materials furnished. The New Jersey Court cited *Ladue Contracting Co. v. Land Development Co.*, 337 S.W.2d 578 (Mo.App. 1960), in emphasizing the fact that water and sewer systems are essential to the comfortable and convenient use of dwellings and that it would be "turn[ing] the clock back to another century" to hold that such improvements are outside the terms of the lien statute. (*Id.* at 585).

The second issue is whether the priority of materialmen's liens is different with respect to a blanket construction loan for a subdivision comprising single dwelling lots and condominiums as compared with a construction loan for a single dwelling in a subdivision where there may have been "off-site" improvements that would not impart notice to lenders of the latter type of loan. Plaintiffs rely on this Court's decision in *Western Mortgage Loan Corp. v. Cottonwood Construction Co.*, 18 Utah 2d 409, 424 P.2d 437 (1967), to support their argument that our mechanics' lien statute provides that liens are to date back only to the time each individual structure was commenced.

*Western Mortgage* involved the relative priorities of mechanics' liens and a construction mortgage on a single lot in a subdivision. The question was whether lien claimants who had furnished labor or materials that went into the construction of the house on that single lot were entitled to tack for priority purposes to work comprising "off-site improvements," i. e., the laying out the subdivision and the installation of water lines, sewer, curb and gutter, and street paving done earlier in connection with the subdivision as a whole. The lien claimants cited § 38–1–5, which reads in part as follows:

> Priority—Over other encumbrances.— The liens herein provided for shall relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, and shall have priority over any lien, mortgage or other encumbrance which may have attached subsequently to the time when the building, improvement or structure was commenced, work begun, or first material furnished on the ground    .    .    . .

This Court held that the recorded construction mortgage took priority over the mechanics' liens because in that case the liens could not relate back to the date of commencement of off-site improvements. The decision rested on the issue of notice. The Court stated, 18 Utah 2d at 412, 424 P.2d at 439:

> The presence of materials on the building site or evidence on the ground that work has commenced on a structure or preparatory thereto is notice to all the world that liens may have attached. However, the off-site construction in developing the subdivision for building sites would not necessarily bring to the attention of a lender that someone is claiming a lien on a particular lot in the subdivision. This is especially true as in this case, where the lender advanced money

to build a home long after the subdivision had been laid out and developed.

The instant case, however, is distinguishable from *Western Mortgage*. Here we are not dealing with a lender who made a loan on a single lot within a subdivision and who had no reason to be on notice as to the existence of prior work. In this case, the initial work performed by Child Bros. related to and benefited the entire subdivision. The mortgage loan in question was a blanket mortgage covering the entire subdivision. Because the initial work was performed over substantial portions of the property involved, it could not properly be characterized as being "off-site" as were the improvements in *Western Mortgage* in relation to the property that was the subject of the construction loan. Furthermore, the claimant of the mechanics' lien in *Western Mortgage* performed the labor on a lot entirely separate from the initial work. In the present case the claimants performed their work on the same site, i. e., the 44 acres covered by FDMI's construction loan.

Plaintiffs also cite *Aladdin Heating Corp. v. Trustees of Cent. States*, Nevada, 563 P.2d 82 (1977), in which the court refused to relate mechanics' liens back to pre-construction architectural, soil testing, and survey work. The court in *Aladdin* required "visible signs of construction to inform prospective lenders [who inspected] the premises that liens had attached," and the work performed in that case and others cited therein resulted in nothing that would put a lender on notice because of the visibility of the work. In the instant case Child Bros. laid water line and sewer pipe for the subdivision, commencing its first work on November 15, 1973. The trial court made no specific findings as to the visibility of Child Bros.' work at the time the loan agreement was entered into, and this issue was not raised or argued by plaintiffs. The work done by Child Bros., however was concededly more substantial than that done in *Aladdin*. Accordingly, *Aladdin* is distinguishable from the present case.

Based on our statute and the issues submitted by the parties, the materialmen with valid liens stand, in this case, on equal footing in dating their liens from the time work commenced. We therefore hold that the mechanics' liens arising from the furnishing of materials and labor both on the overall development site and on individual condominium units within the development relate back to the initial work done on the project by Child Bros.

A third issue involves the effect of Child Bros.' execution in June 1976 of a document titled "Release of All Liens and Claims" pertaining to the Lakeview property. The notarized release document recited that for a valuable consideration Child Brothers, Inc., by its president, Eugene Child, who signed the document, "release[d] and discharge[d]" Mountain Springs, FDMI, Zundel, and the Lakeview subdivision property,

from any and all liens, claims, demands, damages, actions at law or in equity . . . arising out of any contractual or other relationship . . . and/or claims of liens, arising or accruing on or before _____ [date omitted], or existing on that date . . . and all matters involved in any and all claims of liens for all labor performed upon, and all materials furnished to [the Lakeview subdivision property] arising on or before, or existing on, the date specified above, by the undersigned, and by all agents, employees, suppliers, [etc.] . . . all of whom the undersigned hereby warrants have been fully paid, and none of whom has any further claim or lien against such real estate as of the date specified above. . . .

That the parties hereto intend hereby that this Release of All Liens and Claims shall be a final and complete release and discharge of [Mountain Springs, FDMI, Zundel, and the Lakeview subdivision] by the undersigned, [his heirs, assigns, agents, employees, etc.], and all other persons performing labor upon or furnishing materials . . . as of the date specified above, at the instance of the undersigned.

The document was dated June 17, 1976; it was recorded on June 22, 1976.

As this Court stated in upholding the waiver of lien rights in *Dwyer v. Salt Lake City Copper Mfg. Co.*, 14 Utah 339, 344, 47 P. 311, 312 (1896), "A mechanic's lien is a privilege conferred by statute, and ordinarily may be waived by express agreement of the party in whose favor it exists." The legitimacy of a release of lien rights was also recognized in *G. Chicoine Contractors, Inc. v. John Marshal Bldg. Corp.*, 77 Ill. App.2d 437, 222 N.E.2d 712, 714 (1966), where the court stated, "One right the lien claimant has is to execute his full and general waiver releasing his rights to a mechanic's lien against the property." The court then quoted the following language from *Decatur Lumber and Mfg. Co. v. Crail*, 350 Ill. 319, 324, 183 N.E. 228, 230 (1932):

> While a waiver of lien for a clearly expressed special purpose will be confined by the courts to the purpose intended, yet, where a general waiver is executed, and there is nothing in the context to show a contrary intention, there is nothing left for the court to do but enforce the contract as the parties have made it.

■ To be valid and binding a waiver or release of a mechanics' lien by contract or agreement must be supported by a legal consideration. *Kelly v. Johnson*, 251 Ill. 135, 95 N.E. 1068 (1911); *Skidmore v. Eby*, 57 N.M. 669, 262 P.2d 370 (1953). Child Bros., received cash and property in exchange for the release. Its release of lien rights is therefore binding as to those rights accrued up to the time of the release, at least as to it.

■ As to the lien claimants left in the case, all their work on the project was completed prior to the date of Child Bros.' release. Their lien rights had already attached. These lienholders were not parties to the release, did not consent to its terms, and are not in the category of subcontractors or materialmen performing labor or furnishing materials at the instance of Child Bros., and therefore the release does not affect their status as lienholders. They are entitled to the same priority date as that originally accorded Child Bros., whose work was the first done on the project, in accordance with U.C.A. § 38–1–10, which provides:

> The liens for work and labor done or material furnished as provided in this chapter shall be upon an equal footing, regardless of date of filing the notice and claim of lien and regardless of the time of performing such work and labor or furnishing such material.

A final issue relating to lien priority in this case is whether the stipulation that Child's lien was junior to plaintiffs' had any binding legal effect. The stipulation was signed by attorneys for FDMI and Child Bros. on the 11th of January, 1978. It states that Child Bros. released its lien against the Lakeview property and that Child Bros. was the grantee in a warranty deed recorded June 22, 1976, covering Lots 59 and 60, Lakeview Terrace. The second paragraph states:

> Said parties hereby stipulate that the warranty deed is junior and subordinate to the lien or [sic] plaintiff's Trust Deed *and that defendant Child Bros. Inc. has a lien in the sum of $13,450.52 which lien is junior and subordinate to plaintiff's Trust Deed.* [Emphasis added.]

■ Ordinarily, courts are bound by stipulations between parties, *Koron v. Myers*, 87 Idaho 567, 394 P.2d 634 (1964); *Riordan v. Commercial Travelers Mut. Ins. Co.*, 11 Wash.App. 707, 525 P.2d 804 (1974). Such is not the case, however, when points of law requiring judicial determination are involved, *Mobile Acres, Inc. v. Kurata*, 211 Kan. 833, 508 P.2d 889 (1973); *In Re Estate of Maguire*, 204 Kan. 686, 466 P.2d 358, modified 206 Kan. 1, 476 P.2d 618 (1970); *Cox v. City of Pocatello*, 77 Idaho 225, 291 P.2d 282 (1955). Parties are bound by their stipulations unless relieved therefrom by the court, which has the power to set aside a stipulation entered into inadvertently or for justifiable cause, *Klein v. Klein*, Utah, 544 P.2d 472 (1975); *Johnson v. Peoples Finance & Thrift Co.*, 2 Utah 2d 246, 272 P.2d 171 (1954); *Guard v. County of Maricopa*, 14 Ariz.App. 187, 481 P.2d 873 (1971); *Higby v. Higby*, Colo.App., 538 P.2d 493 (1975); *Thompson v. Turner*, 98 Idaho 110, 558 P.2d 1071 (1977).

In the present case, the trial court apparently disregarded the stipulation of FDMI and Child Bros. as to lien priority. The record contains no findings as to the validity or effect of the stipulation, and this Court will not consider this matter for the first time on appeal. Whatever the effect of the stipulation upon Child Bros.' priority status, the other lien claimants who sought priority over FDMI's trust deed are in no way bound by a stipulation to which they were not parties, *Thomas v. State,* 57 Haw. 639, 562 P.2d 425 (1977).

Bland Bros., also a defendant in Case No. 15696, raises the further issues that this appeal is both moot and premature. Mootness is claimed because plaintiff FDMI has bid $1,944,732.86 [3] for the property at the sheriff's sale and is thus required to pay that amount to the sheriff pursuant to Rule 69(e)(4), which states that every bid shall be deemed an irrevocable offer and that the purchaser is liable on such bid. Because the amount bid would satisfy fully the claims of the lienors, as well as plaintiffs, defendants claim that the plaintiffs have no grounds for bringing an appeal. Plaintiffs conceded that should someone pay the amount of $1,944,732.86 during the redemption period, the lien claimants would receive $44,732.86, and the appeal would become moot. Otherwise, plaintiffs argue that this Court should determine the lien claimants to be junior and subordinate to their trust deed. Bland Bros. claims that the redemption period cannot expire where no payment has been made pursuant to the order of sale.

The record shows that plaintiffs themselves stipulated to the amount to be bid and moved the trial court on the 11th day of February, 1978, to amend the Sheriff's Certificate of Sale to provide that the total amount to be paid was $1,944,732.86, in the event that lien claimant Holt-Witmer was granted first priority. An order was signed by the court so amending the certificate of sale. Plaintiffs' objections at this point are more a change of mind than a justifiable claim of error on the part of the trial court. Although a sheriff's deed was issued to the plaintiffs, they have not paid the amount bid into the court as ordered and thus should not have received a deed. The lien claimants who had been adjudged to have first priority have not been paid. The issues raised herein are not moot.

Defendant Bland Bros. also argues that this appeal is premature because various cross-claims and counterclaims have not been resolved. Unless an appeal may be taken pursuant to Rule 54(b), U.R.C.P., or our interlocutory appeal procedure, only "final orders" are appealable to this Court, see Rule 72(a), U.R.C.P. Bland Bros. claims that there was no final order until lien claimant Holt-Witmer's priority status was adjudicated on February 22, 1978.

The order of February 22, 1978, was an amendment to the order dated February 1, 1978. Although the notice of appeal states that it is the February 1 order that is appealed, we deem that order to incorporate by amendment the order of February 22 since it was entered prior to the filing of the notice of appeal. Nonetheless, it is clear that certain cross-claims and counterclaims unrelated to the issue of lien priority remain to be adjudicated.

Whether an order is deemed a "final order" is not necessarily dependent in all instances upon whether all issues in a lawsuit have been adjudicated. The test to be applied is a pragmatic test. See *Brown Shoe Co. v. United States,* 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962); Wright, *Federal Courts,* 505 (3rd ed.). In the instant case no further judicial action remains to be taken with respect to the issues of priority and the sale of the property; and, but for the appeal, sale of the property and disbursement of the proceeds would occur. To require the appeal to abide the determination of pending unrelated claims would make an appeal on the issue of priorities moot. Unless an appeal may be taken at this point,

---

**3.** Since this case is to be remanded to the trial court, we leave to that court the determination of what effect the settlements made during the pendency of the appeal (see Footnote 1) should make with respect to plaintiffs' bid.

substantial property interests may be destroyed since the sheriff's sale would proceed and the money would be disbursed on the basis of the priorities determined by the trial court. With the issuance of a sheriff's deed and the disbursement of monies, the legal rights and obligations of the parties are finally established. Accordingly, under a pragmatic view of the test of finality, the order appealed in this case is final.

Consolidated with the appeal of FDMI and Citibank in Case No. 15696 is an appeal by Bland Bros., Case No. 16051, which challenges the refusal of the trial court to set aside the sheriff's sale held pursuant to the foreclosure order. The facts pertaining to this appeal may be set out briefly. The Lakeview Terrace property was offered at a sheriff's sale on January 19, 1978. FDMI, pursuant to its agreement, bid the sum (as amended) of $1,944,732.86, and subsequently received the sheriff's deed to the property. Before the deed was issued, and when the normal six-month redemption period was about to expire, Bland Bros. moved the lower court to vacate the sale because plaintiff FDMI had failed to pay the amount of its bid into the court as had been ordered. The trial court in an order dated August 15, 1978, denied the motion, stating that its jurisdiction was lost when the appeal regarding lien priorities was taken to the Supreme Court. The court on its own motion ordered FDMI to post a supersedeas bond in the amount of the claims of the mechanics' lienholders who had been adjudged to have first priority.

Bland Bros. argues that the lower court retained jurisdiction over the enforcement of its decree inasmuch as no supersedeas bond was posted prior to the sheriff's sale or before Bland Bros.' motion to have the sale vacated. This position is correct and is sustained by this Court's opinion in *Skeen v. Pratt*, 87 Utah 121, at 125, 48 P.2d 457, at 458 (1935), which stated:

> As an incident to the authority remaining in the trial court to enforce a decree of foreclosure, where an appeal is had without a supersedeas bond or stay, is the authority to compel compliance with the law with respect to the execution of process, and if for any reason such process is improperly executed, then and in such case to vacate the improper proceeding had pursuant to the process, and order the issuance of another in lieu thereof. The court below was in error in holding that it was without jurisdiction to hear and determine the motion to vacate the order of sale.

Bland Bros. also points out a defect in the publication of notice of the sheriff's sale, namely that there was no publication in a Davis County newspaper in the week immediately preceding the sale as required by Rule 69(e)(1), (3), U.R.C.P. Since this issue should be considered by the trial court in connection with the determination as to the validity of the sheriff's sale, we decline to deal with it here.

Our decision regarding the priority issue makes it unnecessary to rule on additional matters argued by the parties herein. It is the opinion of this Court that the lower court was correct in granting priority to the mechanics' lien claimants inasmuch as the initial work by Child Bros. established the priority date for all who provided labor and services on the Lakeview Terrace subdivision. The action of the trial court as to the setting of priorities is therefore affirmed as it pertains to the lien claimants who remain as parties to this appeal.

We affirm the trial court's determination that the mechanics' and materialmen's liens of the defendants whose appeal has not been dismissed have priority over FDMI's trust deed. We remand for any necessary consideration of the issues raised with respect to the sheriff's sale.

Costs to defendants.

CROCKETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.