424 P.2d 437

**WESTERN MORTGAGE LOAN CORPORATION, a corporation, Plaintiff and Respondent,**

v.

**COTTONWOOD CONSTRUCTION COMPANY, a corporation et al., Defendants, Oscar E. Chytraus Company, Inc., a corporation, Gibbons & Reed Concrete Products Company, a corporation, Richard P. Garrick, Boise Cascade Corporation, a corporation, Defendants and Appellants.**

No. 10516.

Supreme Court of Utah.

Feb. 27, 1967.

VanCott, Bagley, Cornwall & McCarthy,. Fabian & Clendenin, Cannon, Duffin & Pace, Mark & Schoenhals, Neslen & Mock,. Salt Lake City, for appellants.

Halliday & Halliday, Backman, Backman & Clark, Ray Quinney & Nebeker,. Salt Lake City, for respondent.

TUCKETT, Justice.

This case is now before the court on an interlocutory appeal. It involves the relative priorities of mechanics lienors' and a. construction mortgage which the plaintiff and respondent seeks to foreclose on lot 10,. Lazy Bar Subdivision of Salt Lake County..

The district court made certain rulings. of which the following two are the subject of this appeal:

1. That the documents evidencing the mortgage transaction between the plaintiff-respondent, Western Mortgage Loan Corporation and the defendant, Cottonwood Construction Company, provided for obligatory or nonvolitional advances, and that such advances together with attorneys fees. and costs take priority as of the time of the recording of the mortgage.

2. A denial of the mechanics lienors' motion for a partial summary judgment to. the effect that certain work constituted the "commencement to do work or furnish materials on the ground for the structure or improvement" within the meaning of Section 38-1-5, U.C.A.1953.

The work of laying out and developing the subdivision, including engineering, installing water mains, sewer mains and laterals, curb and gutter, surfacing streets and other off-site construction was accomplished by Cottonwood Construction Company (the mortgagor) and its predecessors. The lateral sewer line installed on Lot 10 terminated inside the lot. The sewer and lateral were completed about January 1, 1961. Water mains were completed about August, 1962, streets, curb and gutter were commenced in 1961 and completed in 1962.

The Mountain States Telephone and Telegraph Company erected utility poles in the subdivision, including one on Lot 10.

Application for a construction loan was made to Western Mortgage Loan Corporation and approved. A note and mortgage in the amount of $15,750.00 were executed October 29, 1962, and the mortgage was recorded that day.

A separate loan agreement was entered into between Western and Cottonwood Construction Company, which provided in part that in event of default on the part of the mortgagor, Western was released from all further obligations to the borrower, or in the alternative, it could take possession of the premises, finish the improvements and charge the costs to the borrower to be secured on the note and mortgage.

When it later became apparent that Cottonwood had misapplied funds advanced by Western, the latter elected to complete the home. At the time Western took over the construction it had advanced approximately $9,500. An additional sum of about $5,000 was used to complete the home on Lot 10.

A provision of the note and mortgage is as follows: "This mortgage shall also secure additional loans hereafter made by the then holder of the note secured hereby to the then owner of the real estate described herein, provided that no such additional loan shall be made if the making thereof would cause the total indebtedness secured hereby to exceed the amount of the original indebtedness stated herein."

It is the appellants' contention that the language of the note and mortgage quoted above provided for nonvolitional or nonobligatory advances and that each advance made thereunder takes priority only as of its date.

Under the construction loan agreement Western was obligated to pay out the funds as the building progressed. We are of the opinion that the agreement to disburse the funds created an obligation on the part of lender to pay over the funds in accordance with the borrower's directions.[1] We see no distinction between the mortgage in Utah Savings & Loan Association v. Me-

1. Utah Savings & Loan Association v. Mecham, 12 Utah 2d 335, 366 P.2d 598.

cham[2] and the mortgage before us in this case. Under the terms of the loan agreement Western was obligated to deposit the net proceeds of the loan in a separate account to be expended in accordance with the agreement. The mortgage provides for additional loans to be secured by the mortgage, nevertheless, the instrument is for a single fixed amount, and no additional loans were in fact made.

The appellants' second assignment of error relates to the court's denial of the motion for summary judgment based upon a finding that the facts set forth in the supporting affidavits did not constitute "commencement to do work or furnish materials on the ground for the structure or improvement" within the meaning of Section 38–1–5 U.C.A.1953. The appellants claim they are entitled to have their liens relate back and take effect as of the time the first work was done in respect to laying out the subdivision and the installation of water lines, sewers, curb and gutters and street paving.

■ We are not inclined to give the statute such a broad meaning as contended for by the appellants. We are inclined to the view that the legislature intended the language "commencement to do work or furnish materials on the ground" to be limited to relate to the home or other structure which was being or about to be built upon the land. To tack the liens for labor or materials that went into the construction of the house to the liens that may have arisen for labor and materials furnished in off-site improvements in connection with the laying out and construction of facilities used in connection with the subdivision as a whole would be going beyond the intent of the statute. The problem is one of notice. The presence of materials on the building site or evidence on the ground that work has commenced on a structure or preparatory thereto is notice to all the world that liens may have attached. However, the off-site construction in developing the subdivision for building sites would not necessarily bring to the attention of a lender that someone is claiming a lien on a particular lot in the subdivision. This is especially true as in this case, where the lender advanced money to build a home long after the subdivision had been laid out and developed. It is apparent that the persons who supplied labor or materials for the construction of roads, sewers, etc., could have filed liens for unpaid balances due them, if any. The erection of the home was separate and sev-

---

2. Ibid; Valley Lumber Co. v. Wright, 2 Cal.App. 288, 84 P. 58; Home Savings & Loan Association v. Burton, 20 Wash. 688, 56 P. 940; see also anno. 76 A.L.R. 1402; 80 A.L.R.2d 191; 57 C.J.S. Mechanics Liens § 205, p. 774.

erable from the earlier work in developing the subdivision.[3]

The orders and rulings of the district court are affirmed. Costs to respondent.

CALLISTER and ELLET, JJ., concur.

CROCKETT, Chief Justice (concurring specially):

I agree that under the facts as disclosed in this case a mortgage for a definite amount, which is recorded prior to the attachment of any lien rights, should under normal circumstances take preference up to the amount that is paid out under the terms of the recorded mortgage agreement. But I desire to note that there may be situations in which the lending institution is holding money not yet advanced on a building, when it acquires actual knowledge that the builder is diverting money to some other purpose, and knows that the laborers or materialmen are not being paid and will not be paid. Under such circumstances the financier certainly should not be permitted to go on paying the money to a builder and thus in effect assist in cheating the laborers and materialmen out of their pay and preclude them from the right to lien protection. See dissenting opinion of Jones, District Judge, in Utah Savings & Loan Association v. Mecham, 12 Utah 2d 335, 366 P.2d 598.

HENRIOD, Justice (concurring and dissenting):

I concur in that portion of the main opinion with respect to commencement of work, etc., but dissent from that portion having to do with priority of liens of materialmen.

The main opinion says, "We see no distinction between the mortgage in Utah Savings & Loan Association v. Mechan." This statement is disarming. True, there is no difference in the *recorded* mortgage, upon which Utah Savings relied, and the one here. The fallacy of the main opinion's conclusion lies in its assumption that the *cause of action* in the Utah Savings case was identical to this present Western Mortgage case. The former was based on the *recorded* mortgage, while in this case it was based on an *unrecorded collateral* agreement snuggled to the bosoms of the mortgagor and mortgagee, without any opportunity for the materialmen to take a look-see.

The cases are not the same. In Utah Savings, materialmen could rely on the record. In our present case the main opinion charges materialmen with notice of an unrecorded, independent agreement. The *recorded* mortgage in Utah Savings *said* advancement of moneys by the mortgagee was *obligatory*. The *unrecorded collateral* agreement in the present case clearly was

---

**3.** National Lumber Co. v. Farmer & Son, Inc. et al., 251 Minn. 100, 87 N.W.2d 32; Rupp v. Earl H. Cline & Sons, Inc. et al., 230 Md. 573, 188 A.2d 146, 1 A.L.R. 3d 815.

*not obligatory,* but volitional. A material-man may not deliver a two-by-four piece of plywood if he knew he could not rely on the *recorded* promise of the mortgagee to pay the mortgagor as represented, but would be bound by a secret, unrecorded agreement that would permit the mortgagee to cancel the recorded promise five minutes after it was recorded, an incident beyond the ken of a materialman. To conclude otherwise does not dignify the recording act.