**Wayne TRIPP, dba Modern Drywall, Plaintiff and Appellant,**

v.

**Jeff VAUGHN, dba Jeff Vaughn Construction, Lincove Partnership, Contract Carpets & Interiors, Inc., Familian Pipe & Supply Company, Lowry Overhead Doors, Inc., Anderson Lumber Company, Gary R. Free, Basin Wholesale Electric, Inc., Basin Sportsman and Electric and Donald T. Anderson, Defendants and Appellants,**

**Basin State Bank, Defendant and Respondent.**

**CONTRACT CARPETS & INTERIORS, Cross–Claimant and Appellant,**

v.

**Jeff VAUGHN, dba Jeff Vaughn Construction, and Lincove Partnership, Cross–Claim Defendants.**

**Nos. 860130–CA, 860131–CA.**

Court of Appeals of Utah.

Dec. 15, 1987.

Evan A. Schmutz, Jones, Waldo, Holbrook & McDonough, Salt Lake City, for defendant and appellant Contract Carpets & Interiors.

Kenneth G. Anderton, Vernal, for cross-claim defendant and respondent Basin State Bank.

Kirk Bennett, Bennett & Judd, Vernal, for plaintiff and appellant Wayne Tripp, dba Modern Drywall.

David M. Wahlquist, James J. Cassity, Kirton, McConkie & Bushnell, Salt Lake City, for amici curiae Pollack & Pieper.

Clark B. Allred, Vernal, for Donald T. Anderson.

Larry A. Steele, Jones, Waldo, Holbrook & McDonough, Salt Lake City, for Basin Wholesale Elec. and Basin Sportsman.

Lynn B. Larsen & Curtis D. Elton, Wickwire, Gavin & Gibb, Salt Lake City, for Familian Pipe & Supply.

Bryan W. Cannon, Salt Lake City, for Gary R. Free.

Thomas R. Patton, Zabriskie & Patton, Provo, for Lincove Partnership and Buchanan.

Scott C. Pierce, McKay, Burton, Thurman & Condie, Salt Lake City, Lowry Overhead Doors.

## OPINION

Before GREENWOOD, ORME and JACKSON, JJ.

GREENWOOD, Judge:

Appellants, Contract Carpets & Interiors, Inc., Wayne Tripp, Donald Anderson, Basin Wholesale Electric, Inc. and Basin Sportsman and Electric appeal from the trial court's ruling that Basin State Bank had priority over appellants' mechanics' liens. We affirm.

In the summer of 1981, Lincove Associates, a general partnership comprised of Craig Christensen, Steve Hall and Greg Morrison, purchased property in Vernal, Utah which it intended to develop into a subdivision. In the fall of 1981, Lincove Associates entered into an earnest money agreement with Lincove Partnership, an unrelated entity composed of Jeffrey Vaughn, Bob King, DeVerl Byington and Richard Buchanan, providing for the sale of the Vernal property, described as a subdivision of improved lots with curb, gutter, sidewalk, fence, road and connections to sewer, water, power and telephone. On May 27, 1982, Lincove Associates and Lincove Partnership closed the sale of the property. Lincove Partnership financed its purchase of the property through Basin State Bank and secured the loan with a trust deed on the property. On May 28, 1982, Basin State Bank recorded the trust deed. After May 28, 1982, Lincove Associates proceeded with work to provide the subdivision of improved lots with curb, gutter, sidewalk, fence, road and connections to sewer, water, power and telephone, as it had agreed. Also after May 28, appellants provided labor and materials for the property and subsequently, filed mechanics' liens on the property. One of the lienholders, Wayne Tripp, filed this action seeking foreclosure of his lien and named the other lienholders as co-defendants. Wayne

Tripp's suit was consolidated with a pending suit by Basin State Bank to foreclose on its trust deed.[1]

On December 27, 1984, a trial was held concerning the priority of the liens on the property. At trial, appellants attempted to establish that the priority of their liens related back to work performed on the property, i.e. a survey, a sewer stub-in and a roadway, prior to May 28, 1982. The court found that the survey did not satisfy the notice requirements of Utah Code Ann. § 38-1-5 (1974) and that the sewer stub-in was not lienable work under Utah Code Ann. § 38-1-3 (1986). The court made no findings regarding the roadway. The court then ruled that Basin State Bank's lien was prior to all others, granted a judgment of foreclosure and ordered the property sold.

## I.

On appeal, appellants claim that under section 38-1-5, their mechanics' liens relate back to the work performed on the subdivision prior to May 28, 1982, and, therefore, their liens should take priority over Basin State Bank's trust deed. Before determining whether appellants' liens relate back, the work performed prior to recordation of the trust deed must meet the statutory requirements for the attachment of mechanics' liens under section 38-1-3.

First, we will address whether the trial court erred in finding that the sewer stub-in did not constitute lienable work within the meaning of the statute. Section 38-1-3 states that:

> Contractors, subcontractors and all persons performing any services or furnishing or renting any materials or equipment used in the construction, alteration, or improvement of any building or structure or improvement to any premises in any manner ... and licensed architects and engineers and artisans who have furnished designs, plats, plans ... surveys or superintendence ... shall have a lien

upon the property upon or concerning which they have rendered service....

The trial court found that:

> the installation of the sewer line was an incidental item of work done as a part of an overall valley-wide sewer project, and was done by a separate sewer contractor primarily for the benefit of the sewer project. The Court finds that the stubs were routinely placed at locations requested by landowners, and were usely [sic] placed at no charge as was the case for this sewer stub. Based on the evidence presented at the hearing, the Court finds that the installation of the sewer stub-in does not meet the requirements of UCA Section 38-1-1 et seq. and cannot form the basis of relationback [sic] of these liens.

A trial court's findings of fact must be supported by substantial evidence, *Hidden Meadows Dev. Co. v. Mills*, 590 P.2d 1244, 1250 (Utah 1979), and will not be disturbed unless they are clearly erroneous. *State v. Walker*, 743 P.2d 191, 193 (Utah 1987); *Lemon v. Coates*, 735 P.2d 58, 60 (Utah 1987).

In this case, the design engineer for the sewer system testified that the sewer stub-in to the subdivision was installed in the fall of 1981 as part of a valley-wide sewer project, and that the sewer district installed stub-ins wherever a development was present. He also testified that, at the request of Greg Morrison, one of the partners in Lincove Associates, the manhole cover outside of the subdivision was relocated at no charge to Lincove Associates. Mr. Morrison also testified that he requested the relocation and that Lincove Associates never paid for the relocation. The testimony regarding whether the stub-in crossed the boundary to the property was disputed. One witness testified that the stub-in did not cross into the property, while another testified that the stub-in extended thirty feet into the property.

▮▮▮▮ Under section 38-1-3, the sewer stub-in does not constitute lienable work.

---

**1.** This Court has issued an earlier opinion also entitled *Tripp v. Vaughn*, which arises from the same factual background as this case. *Tripp v.* *Vaughn*, Case No. 860129-CA is an appeal based on procedural aspects of the case and is reported at 746 P.2d 794 (1987).

Because the stub-in was installed as part of a valley-wide project at no charge to the subdivision, there is no contractor or subcontractor who could claim a lien on the subdivision for installation of the sewer stub-in. Further, the stub-in is not an "improvement" under section 38–1–3. In *First of Denver Mortgage Investors v. C.N. Zundel and Associates*, 600 P.2d 521 (Utah 1979) work performed on a subdivision consisting of locating existing lines and putting in pipeline, water and sewer systems and storm drains was found to be an "improvement to any premises in any manner" under section 38–1–3. The present case differs from *Zundel* in that only a stub-in was installed at best thirty feet into the property rather than an entire sewer system inside the subdivision. Therefore, under the statute, the stub-in was not lienable work due to the absence of a person who could claim a lien, and under *Zundel*, the stub-in did not constitute an "improvement". Because the trial court's finding that the stub-in was not lienable work is supported by substantial evidence and is not clearly erroneous, we will not disturb that finding on appeal.

■■■■ We must also determine whether the roadway constituted lienable work. Appellants claim that the trial court's failure to make a finding that the roadway existed and a conclusion that their liens could relate back to construction of the road constituted reversible error. It is well established that "the trial court must make findings on all material factual issues raised by the evidence." *Sorenson v. Beers*, 614 P.2d 159, 160 (Utah 1980). In this case, however, the existence of the roadway was not a material factual issue. The evidence regarding the existence of a roadway was scant and was not seriously disputed by respondent. Moreover, even if the court had found that a roadway existed, as appellants urge would have been proper, insufficient evidence was submitted to allow the court to find that the roadway was lienable work. There was no indication in the evidence as to who constructed the roadway or whether they would be entitled to a lien on the property. The purpose of the mechanics' lien statute is to protect laborers and materialmen who have added directly to the value of the property by performing labor or furnishing materials. *Calder Bros. Co. v. Anderson*, 652 P.2d 922, 924 (Utah 1982); *Zundel*, 600 P.2d at 525 (Utah 1979). Therefore, because the existence of the roadway was not a material issue at trial and because insufficient evidence was submitted to allow the court to find that the roadway was even lienable work, we hold that the court committed no error in failing to enter findings of fact regarding the roadway.

Finally, we must examine whether the survey satisfied the requirements of section 38–1–3 and was therefore lienable work. The stipulated evidence submitted at trial established that an engineer surveyed the property in August of 1981. Under the statute, "licensed architects and engineers and artisans who have furnished designs, plats, plans ... shall have a lien upon the property." Clearly, the survey was lienable work under section 38–1–3.

### II.

Because the survey is the only lienable work performed prior to May 28, 1982, the second issue is whether the appellants' liens can relate back to the date of the survey. Utah Code Ann. § 38–1–5 (1974) provides that:

> The liens herein provided for shall relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, and shall have priority over any lien, mortgage or other encumbrance which may have attached subsequently to the time when the building, improvement or structure was commenced, work begun, or first material furnished on the ground....

The trial court's findings state that "the survey of the property by Lincove Associates, does not meet the notice standard contemplated by UCA Section 38–1–5, and that the liens may not relate back to the survey because of the absence of work or materials furnished 'on the ground' by the surveyor."

As we have previously noted, a trial court's findings of fact will only be disturbed on appeal if they are clearly erroneous. *State v. Walker,* 743 P.2d at 193; *Lemon v. Coates,* 735 P.2d at 60. Under section 38–1–5, the phrase "commencement to do work or furnish materials on the ground for the structure or improvement," is construed in favor of lien claimants. *Calder,* 652 P.2d at 924. However, in order for a lien to relate back, notice that the earlier work has commenced must be given to others who may claim a lien, such as a lender. *Western Mortgage Loan Corp. v. Cottonwood Constr. Co.,* 18 Utah 2d 409, 424 P.2d 437, 439 (1967). "Generally, the presence of building materials upon the land or other visible evidence of work performed provides notice to any interested party that work has commenced." *Calder,* 652 P.2d at 924 n. 1. During the trial in this case one witness testified that in the fall of 1981 only the exterior boundaries of the property would have been visible, and in the spring of 1982 the stakes defining the interior boundaries of the property would have been visible. Another witness testified that he did not recall seeing survey stakes on the property in the fall of 1981, and a third witness testified that at the time of the survey, the property was still being used as an alfalfa field. From the evidence submitted, the survey stakes were not sufficiently noticeable or related to actual construction to impart notice to a prudent lender. We conclude that the trial court's finding is supported by substantial evidence and is not clearly erroneous. Therefore, we will not disturb that finding on appeal.

Affirmed.

JACKSON, J., concurs.

ORME, J., concurs in the result.