KETCHUM, KONKEL, BARRETT, NICKEL & AUSTIN, d/b/a KKBNA Incorporated, a Utah corporation; Kent W. Walker and Michael V. Lee, a Utah partnership, d/b/a The Architectural Partnership; Sheldon L. Pollack Corporation, a California corporation; and Norbert W. Pieper, A.I.A., Inc., a California corporation, Plaintiffs and Appellants,

v.

HERITAGE MOUNTAIN DEVELOPMENT COMPANY, a Utah corporation, et al., Defendants and Respondents.

No. 890284–CA.

Court of Appeals of Utah.

Dec. 1, 1989.

---

David M. Wahlquist (argued), James J. Cassity, Merrill F. Nelson, Kirton, McConkie & Bushnell, Salt Lake City, Attorneys at Law for Pollack & Pieper.

Richard C. Cahoon, Marsden, Orton & Cahoon, Salt Lake City, for Nordic Constructors.

David R. Olsen (argued), Carl F. Huefner, Michael W. Homer, Suitter, Axland, Armstrong & Hanson, Salt Lake City, for respondent, Guar. S & L.

Richard L. Hill, Jeffrey R. Hill, Olsen, Hintze, Nielson & Hill, Provo, for respondent, Heritage Mtn.

Before BENCH, BILLINGS and GREENWOOD, JJ.

BILLINGS, Judge:

Appellants Sheldon L. Pollack Corp., Norbert W. Pieper, A.I.A., Inc. ("appellants"), among other lien holders, filed actions to foreclose their mechanics' liens recorded against property being developed as a ski resort in Utah County. The construction lender, Guaranty Savings and Loan Association ("Guaranty"), moved for partial summary judgment claiming its trust deed had priority over all mechanics' liens on the property. The lien holders opposed the motion and filed cross-motions for partial summary judgment on the priority issue. The trial court ruled in favor of Guaranty, and certified its order as final under Utah Rules of Civil Procedure 54(b). Appellants appeal the trial court's order on priority.

We set forth the relevant, undisputed facts before the trial court when it granted summary judgment in this mechanics' liens priority dispute. In October 1972, Wilderness Associates, the predecessor in interest of Heritage Mountain Development Co. ("Heritage"), began the planning and development of a ski resort. The master plan for the ski resort contemplated the common development of three contiguous parcels of property in Utah County: 110 acres owned in fee simple ("Fee Property"); 41 acres leased from the State of Utah ("Leased Property"); and 4500 acres of federal land under a special use permit ("Permit Property").

Between September 1978 and the summer of 1982, Heritage remodeled a barn for a headquarters, and installed sewer and water lines, built parking lots, and made other improvements on the Leased Property. During the same period of time, Heritage cut construction access roads, flagged ski trails and excavated, and performed soil tests on all three parcels. From early 1981 to the summer of 1982, appellants performed architectural, engineering, surveying, consulting, and planning services for the entire ski development.

On November 17, 1982, a mortgage lender obtained a Judgment and Decree of Foreclosure on the Fee Property. Heritage repurchased the Fee Property on June 29, 1983.

Beginning in April of 1983, an engineering firm surveyed and staked the boundaries of the property. In June 1983, Heritage obtained a predevelopment loan from Guaranty. To secure the loan, Heritage executed a trust deed on the property. Guaranty recorded the trust deed on September 15, 1983. At the time of this loan, Guaranty knew that appellants had performed extensive design work on the project. Between June and September of 1983, appellants and others resumed design work on the project.

The long-term financing for the ski development fell through and no additional on-site construction took place. Heritage abandoned the project by the summer of 1984 and left appellants and other contractors unpaid. The lien holders, including appellants, sued to foreclose their mechanics' liens and Guaranty opposed the suits by asserting its trust deed had priority over all mechanics' liens.

The district court held that "commencement of work," for the purpose of establishing priority under Utah Code Ann. § 38–1–5 (1988), requires "visible, on-site" improvements, and thus appellants' mechanics' liens did not attach prior to the

recording of Guaranty's trust deed. In addition, the court held the November 1982 foreclosure judgment on the Fee Property barred relation back of appellants' liens to on-site work performed on the property prior to the date of the foreclosure. The court also concluded that no on-site work occurred between the November 1982 foreclosure and the recording of Guaranty's trust deed on September 15, 1983, to which the liens could relate back. Appellants challenge each of the trial court's conclusions claiming the court should have held their mechanics' liens had priority over Guaranty's trust deed.

## I. EFFECT OF OFF–SITE ARCHITECTURAL WORK ON MECHANICS' LIENS PRIORITY

■ Appellants claim that, under Utah Code Ann. §§ 38–1–5 and –10 (1988), their post-foreclosure, pre-trust deed, off-site design work on the project gives their mechanics' liens priority over Guaranty's trust deed. We disagree.

Under Utah law, architects' services are lienable. Utah Code Ann. § 38–1–3 (1981) expressly provides for liens for architectural services:

[L]icensed architects and engineers and artisans who have furnished designs, plats, plans, maps, specifications, drawings, estimates of cost, surveys or superintendence, or who have rendered other like professional service, or bestowed labor, shall have a lien upon the property upon or concerning which they have rendered service, performed labor, or furnished or rented materials. . . .

Guaranty does not challenge the validity of the appellants' liens, but claims its trust deed has priority over all valid mechanics' liens under the statutory scheme. Priority of mechanics' liens, including architectural liens, is governed by Utah Code Ann. § 38–1–5 (1988), which provides:

The liens herein provided for shall relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, and shall have priority over any lien, mortgage or other encumbrance which may have attached subsequently to the time when the building, improvement or structure was commenced, work begun, or first material furnished on the ground. . . .

■ Lien statutes are construed broadly in order to achieve their protective purpose. *AAA Fencing Co. v. Raintree Dev. & Energy Co.*, 714 P.2d 289, 291 (Utah 1986); *Interiors Contracting, Inc. v. Navalco*, 648 P.2d 1382, 1386 (Utah 1982). Further, the phrase "commencement to do work" is construed in favor of the lien claimant. *Calder Bros. Co. v. Anderson*, 652 P.2d 922, 924 (Utah 1982) (citing *Bankers Trust Co. v. El Paso Pre–Cast Co.*, 192 Colo. 468, 560 P.2d 457 (1977)); *see also Tripp v. Vaughn*, 747 P.2d 1051, 1055 (Utah Ct.App.1987).

The precise statutory construction issue presented is the meaning of the language "commencement to do work or furnish materials on the ground for the structure or improvement" in section 38–1–5. The district court construed this section to require the commencement of visible, on-site improvements without regard to whether a subsequent lender had actual notice of prior off-site lienable work such as appellants'.

■ The construction of a statute is a question of law and thus we review the trial court's conclusion under a correction of error standard. *See, e.g., Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1038 (Utah 1989) ("rulings of a trial court regarding statutory construction are not entitled to particular deference."); *Forbes v. St. Mark's Hosp.*, 754 P.2d 933, 934 (Utah 1988) (no deference need be given to trial court's statutory interpretation).

Appellants claim the district court misconstrued the statute because it did not restrict the modifying phrase "on the ground" to furnishing materials and instead applied it to the earlier disjunctive phrase "commencement to do work." Appellants argue that section 38–1–5 contemplates alternative times of lien attachment for priority purposes either at the commencement to do work (with no on-site

requirement) or at the furnishing of materials on the ground. Thus, they assert their architects' liens attached for priority purposes at the time they commenced architectural design work.

This issue has never been squarely dealt with by Utah courts. However, Utah case law discussing priority under section 38–1–5 has emphasized visible work performed on the property or the presence of materials, giving notice that work has commenced on the property. In *Calder Bros. Co. v. Anderson*, 652 P.2d 922 (Utah 1982), the court rejected the lien claimant's claim of priority because "[a]t no point up to and including the time [the lender's] mortgage was recorded, was it evident from the inspection of the premises that an improvement had been commenced." *Id.* at 924. The court stated that "visible evidence of work performed provides notice to any interested party that work has commenced." *Id.* at 924 n. 1.

In *First of Denver Mortgage Investors v. C.N. Zundel & Assocs.*, 600 P.2d 521, 526 (Utah 1979), the court allowed a mechanic to attach a lien to a 44–acre subdivision for its services of putting in water and sewer lines and storm drains. The court, in addressing the visibility of work issue, distinguished this on-site pipeline installation from the architectural and survey work at issue in the case of *Aladdin Heating Corp. v. Trustees*, 93 Nev. 257, 563 P.2d 82, 84 (1977). In *Aladdin*, the Nevada Supreme Court required visible signs of construction to inform prospective lenders who inspected the premises that liens had attached and, thus, refused to relate mechanics' liens back to architectural, survey and soil testing work.

In *Western Mortgage Loan Corp. v. Cottonwood Constr. Co.*, 18 Utah 2d 409, 424 P.2d 437 (1967), the court again stressed the requirement that there be evidence on the ground that work has commenced. The court refused to allow off-site general subdivision improvements not involving the lot at issue and done at a much earlier time to qualify as commencement to do work under the statute. 424 P.2d at 438–39. The court stated that "[t]he problem is one of notice. The presence of materials on the building site or evidence on the ground that work has commenced on a structure or preparatory thereto is notice to all the world that liens may have attached." *Id.* at 439.

This court, in *Tripp v. Vaughn*, 747 P.2d 1051 (Utah Ct.App.1987), refused to allow mechanics' liens to relate back under section 38–1–5 to survey work done on the property because of the absence of work or materials furnished on the ground by the surveyor. *Id.* at 1055. The court assumed that "on the ground" applied to both work and materials.

Appellants argue that *Zions First Nat'l Bank v. Carlson*, 23 Utah 2d 395, 464 P.2d 387 (1970), supports their claim that pre-construction engineering and architectural drawings constitute commencement of work under section 38–1–5. However, the *Carlson* court specifically stated that it was not dealing with the issue of priority under 38–1–5, but only with the validity of architect's liens under section 38–1–3. 464 P.2d at 389. The *Carlson* court merely noted that the architect's lien would have been valid against the lessor, if the lessee had been the agent of the lessor, even though construction of the building did not occur. *Id.* at 388. The distinction between the rights of mechanics against the owner of the property where no priority issue exists and the adjustment of relative priorities of third parties in the property is crucial.[1]

---

1. We agree with the writer of an article on Utah mechanics' lien law:

    Architects and surveyors are specifically entitled to mechanics' liens under the Utah statute. Their liens create a priority problem, however, since their services are usually performed before the "visible to the eye" commencement of construction. The appropriate solution to this problem would appear to be that their liens should attach [for priority purposes] at the time of the "visible to the eye" commencement of construction. Otherwise, there will be no practical way for interested parties to ascertain whether or not liens have accrued on the property.

    Note, *The Utah Law of Mechanics' Liens*, 1966 Utah L.Rev. 181, 187–88 (footnotes omitted).

Not only is appellants' construction of "commencement of work" in section 38–1–5 contrary to prior Utah case law, but it results in a tortured, illogical construction of the statutory language. Appellants would have us create two classes of lien holders. Materialmen would be required to deliver their goods to the job site in order to maintain priority. However, architects or engineers would have their liens attach for priority purposes when they first put pen to paper. Thus, a materialman who had engaged in substantial pre-delivery custom design work would be cut off, but not the pure service provider. Not only is this an irrational division, but it is also in conflict with the policy of "equal footing" for lien claimants provided in Utah Code Ann. § 38–1–10 (1988).[2]

Michigan, like Utah, has expanded mechanics' lien protection to engineers and architects. Nevertheless, the Michigan court expressly rejected the argument that by amending the statute to include architectural services the legislature intended to overturn the former common law requirement of visible, on-site commencement of construction for priority. The court concluded:

[W]e think it unreasonable to believe the Legislature intended to indirectly change [the section of the mechanics' lien stat-

ute], containing the traditional and well-established rule requiring a visible, on-site commencement of construction in order to establish priority, by the simple expansion of the lienable services outlined in a different section. . . .

*Williams & Works, Inc. v. Springfield Corp.*, 408 Mich. 732, 293 N.W.2d 304, 311 (1980).

The majority of other jurisdictions which have considered the issue of whether off-site services of architects and engineers constitute the commencement of work for purposes of the priority of mechanics' liens have answered in the negative.[3] *Walker v. Lytton Sav. & Loan Ass'n*, 2 Cal.3d 152, 465 P.2d 497, 502, 84 Cal.Rptr. 521, 527 (1970) (architectural services);[4] *Williams & Works*, 293 N.W.2d at 312 (engineering services);[5] *Reuben E. Johnson Co. v. Phelps*, 279 Minn. 107, 156 N.W.2d 247, 251–52 (1968) (architectural services);[6] *Aladdin Heating*, 563 P.2d at 84 (architectural services).[7]

Although each statutory scheme is unique, the decisions are in harmony that physical notice of work on the property must be present before mechanics' liens have priority over other third parties, especially lenders. *See Torkko/Korman/Engi-*

**2.** Utah Code Ann. § 38–1–10 (1988) provides:
The liens for work and labor done or material furnished as provided in this chapter shall be upon an equal footing, regardless of date of filing the notice and claim of lien and regardless of the time of performing such work and labor or furnishing such material.

**3.** The case law concerning the insufficiency of surveying, staking, and soil testing discussed in Section IV further supports a finding that off-site preparatory work is insufficient for mechanics' lien priority purposes.

**4.** Cal.Civ.Proc.Code § 1188.1 (West 1969) provides:
The liens provided for in this chapter, except as otherwise . . . provided, are preferred to any . . . deed of trust, or other encumbrance upon the premises and improvements . . . which may have attached subsequent to the time when the building, improvement, structure, or work of improvement in connection with which the lien claimant has done his work or furnished his material was commenced. . . .

**5.** Mich.Comp.Laws § 570.9(4) provides:
The liens for such labor or materials furnished . . . shall attach to the buildings, machinery, erection, structure, or improvement for which they are furnished or done, subject to any prior recorded title, claim, lien, encumbrances, or mortgage to or upon the land upon which such building or buildings, machinery, erection, structure or improvement belongs or is put. . . .

**6.** Minn.Stat. § 514.05 (1947) provides:
All such liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record. . . .

**7.** Nev.Rev.Stat. § 108.225 (1986) provides:
The liens . . . are preferred to . . . [a]ny lien, mortgage or other encumbrance which may have attached subsequent to the time when the building, improvement or structure was commenced, work done, or materials were commenced to be furnished.

*neers v. Penland Ventures,* 673 P.2d 769, 773 (Alaska 1983); *Walker,* 465 P.2d at 501–02, 84 Cal.Rptr. at 526–27; *Tracy Price Assocs. v. Hebard,* 266 Cal.App.2d 778, 72 Cal.Rptr. 600, 606 (1968); *Gollehon, Schemmer & Assocs., Inc. v. Fairway–Bettendorf Assocs.,* 268 N.W.2d 200, 202 (Iowa 1978); *Williams & Works,* 293 N.W.2d at 312–13; *Aladdin Heating,* 563 P.2d at 84.[8]

Appellants argue we should follow the courts of Colorado which have held that preliminary work of an architect, engineer or surveyor is commencement of work for purposes of lien priority.[9] *See Weather Eng'g & Mfg., Inc. v. Pinon Springs Condominiums, Inc.,* 192 Colo. 495, 563 P.2d 346, 349 (1977); *Bankers Trust Co. v. El Paso Pre–Cast Co.,* 192 Colo. 468, 560 P.2d 457, 461 (1977); *Park Lane Properties, Inc. v. Fisher,* 89 Colo. 591, 5 P.2d 577, 579 (1931). They contend that because Utah adopted its original mechanics' lien statute from Colorado,[10] under principles of statutory construction we should give Utah's statute the same construction. *State v. Johnson,* 12 Utah 2d 220, 364 P.2d 1019, 1020 (1961).

However, this general rule has many exceptions. In *Jensen v. Intermountain Health Care, Inc.,* 679 P.2d 903 (Utah 1984), the Utah Supreme Court stated:

> We recognize that when the Legislature adopts a statute from another state, the presumption is that the Legislature is familiar with that state's judicial interpretations of that statute and intends to adopt them also. However, that canon of statutory construction is not a hard and fast principle; it is subject to a number of exceptions, several of which are directly applicable in the instant case. In the first place, it is not applicable where there have been material changes made in the second statute. Secondly, the above-stated rule of statutory construction is subject to the exception that if the borrowed statute is "given a different setting in the adopting state" the construction placed upon the statute in the originating state need not be followed. [quoting 73 Am.Jur.2d *Statutes* § 334 at 478 (1974).]
>
> Furthermore, the canon of construction referred to is not applicable where the courts of the adopting state are clearly of the opinion that the foreign construction is erroneous. In addition, "the interpretation of an adopted statute by decisions of dates subsequent to that of the adoption cannot have been adopted by the statute." [quoting 73 Am. Jur. 2d *Statutes* § 335 at 478 (1974).]

*Id.* at 904–05 (citations omitted).[11]

Several of the exceptions apply here. Colorado has a different statutory scheme because Colorado has a contract recording system which gives notice of mechanics'

---

**8.** Appellants argue that a construction lender could protect itself from pre-construction design liens taking priority by providing the architect and other preliminary service providers be paid out of the first draw on the construction loan. However, this would not protect the lender because, under Utah law, commencement of any work establishes the date from which other mechanics' liens take priority even if the mechanic providing the first work releases or waives his own lien rights. *See Duckett v. Olsen,* 699 P.2d 734, 736 (Utah 1985); *First of Denver Mortgage,* 600 P.2d at 527. On the other hand, architects and engineers can contract with the developer to protect themselves by providing for compensation out of the initial draw on the construction loan.

**9.** Colo.Rev.Stat. § 38–22–106(1) (1973) provides:

All liens established by virtue of this article shall relate back to the time of the commencement of work under the contract between the owner and the first contractor, or, if said contract is not in writing, then such liens shall relate back to and take effect as of the time of the commencement of the work upon the structure or improvement....

**10.** When the Mechanic's Lien Law was passed, the Utah Legislature stated, "The Mechanic's Lien Law of this state was taken from Colorado, together with the construction placed thereon by the Colorado courts." [Compiler's Note to Utah Code Ann. title 52, ch. 1 (1943)].

**11.** In fact, the limited utility of the presumption on adoption of judicial interpretations is illustrated by the fact that Colorado adopted its mechanics' lien statute from California. *See Chicago Lumber Co. v. Newcomb,* 19 Colo.App. 265, 74 P. 786, 789–90 (1903). Yet, California courts refuse to allow architectural work to constitute commencement of work for priority purposes.

lien claims.[12] In addition, the Colorado statute did not contain the phrase "on the ground" when Utah adopted it in 1943 nor did it contain that phrase when the Colorado court decided that architectural services constitute commencement of work. Finally, the Colorado case law relied upon by appellants was decided after Utah's adoption of Colorado's statute and thus, Colorado's interpretation had not been "placed thereon." [13]

Appellants finally claim the general case law disallowing pre-construction service liens priority should not apply in this case because the lender had actual notice of their prior substantial architectural and design work.

If this court were to allow architects' work to establish the "commencement" of the project, not just architects' liens but all other liens would relate back to the date of the architectural work. Under Utah Code Ann. § 38–1–10 (1988), all mechanics' liens are on equal footing for purposes of priority.[14] Accordingly, a trust deed recorded after attachment of a mechanics' lien is inferior in priority to that lien and all other mechanics' liens filed on the property. *First of Denver Mortgage*, 600 P.2d at 526–29.

Other jurisdictions have rejected the same argument because of concern over a possible adverse impact on the financing of construction projects. *See Walker*, 465 P.2d at 502–03, 84 Cal.Rptr. at 527–28; *Tracy Price Assocs.*, 72 Cal.Rptr. at 606; *Williams & Works*, 293 N.W.2d at 314.

We believe the predictability sought by the mechanics' lien statutory scheme would be undermined if actual notice of architectural work by a third party claiming priority qualified this off-site design work as "commencement to do work" for priority purposes under section 38–1–5. First, it would multiply litigation over the issue of whether the third party had actual notice. Second, all mechanics' liens for work performed on the project, not just the work of the architect, would suddenly take priority over a secured lender with the consequent adverse impact on construction financing. Finally, and most importantly, had the legislature intended priority under section 38–1–5 to be affected by actual notice, it could have so stated but did not.[15]

We are persuaded that the policy of giving third parties notice of possible mechanics' liens requires visible, on-site construction to qualify for "commencement of work" under section 38–1–5. Thus, the off-site work of architects does not constitute commencement of work under section 38–1–5.

## II. EFFECT OF FORECLOSURE ON MECHANICS' LIEN PRIORITY

■ The trial court held the November 17, 1982, foreclosure judgment on the fee property cut off the mechanics' liens claimed for visible on-site road and ski trail construction, and construction of a project headquarters on the Leased Property. Appellants argue that the foreclosure judgment should not bar the relation back of their liens to the work done prior to the foreclosure, relying on *Duckett v. Olsen*, 699 P.2d 734, 736 (Utah 1985) and *First of Denver Mortgage Invs. v. C.N. Zundel & Assocs.*, 600 P.2d 521, 527 (Utah 1979). These Utah cases held that the voluntary release of an early mechanics' lien does not affect the status of subsequent lien holders

---

**12.** Colo.Rev.Stat. § 38–22–101(3) (1982). Utah has recently enacted a statute that would give notice to third parties of commencement of a project or improvement. The statute requires mechanics' lien claimants to file a preliminary notice of lien within 45 days of performing the work. Utah Code Ann. § 38–1–27(2)–(8) (1989). It is unclear what, if any, impact this statute will have on the priority issue under section 38–1–5 as it deals only with the validity of liens.

**13.** Other than Colorado, only Oklahoma has stated that engineering work performed before the trust deed is recorded is superior to the trust deed. *Midland Mortgage Co. v. Sanders England Invs.*, 682 P.2d 748, 749–50 (Okla.1984).

**14.** *See supra* note 2.

**15.** The legislature is the forum for the relief appellants seek. The legislature could, if it so chose, fashion legislation that would allow pre-construction liens to attach if lenders are on actual notice of the work and yet not allow post-construction liens to relate back to these liens under section 38–1–10.

and these subsequent lien holders are entitled to the priority date of the released lien under 38–1–10. We are not persuaded that the effect of a foreclosure judgment and a voluntary lien waiver should be the same in analyzing lien priority.

Section 78–37–3 of Utah's foreclosure statute deals specifically with unrecorded liens and provides:

> No person holding a conveyance from or under the mortgagor of the property mortgaged, *or having a lien thereon, which conveyance or lien does not appear of record in the proper office at the time of the commencement of the action,* need be made a party to such action, and the judgment therein rendered, and the proceedings therein had, are as conclusive against the party holding such unrecorded conveyance or lien as if he had been made a party to the action.

Utah Code Ann. § 78–37–3 (1987) (emphasis added). The statute clearly provides that an unrecorded lien is cut off by a foreclosure action.

Although not specifically so stating, the trial judge seems to have lumped the Fee, Leased, and Permit Property together in finding that the foreclosure of the Fee Property cut off prior work done by mechanics for the purpose of priority. Guaranty offers no authority to support this unique position and we find it untenable. Rather Guaranty argues as an alternative ground on appeal that the doctrine of material abandonment cuts off the pre-foreclosure work on the Leased and Permit Property.

### III.  MATERIAL ABANDONMENT

■ Guaranty argues that there was a "material abandonment" of the project and thus appellants' liens cannot relate back to the work performed on the Leased and Permit Properties during the pre-foreclosure, pre-trust deed period. The Utah Supreme Court, in setting out the general principles applicable to the relation back of mechanics' liens, has alluded to the doctrine of material abandonment.

For one contractor's lien to relate back to the commencement of work or supplying of materials by another contractor however, both contractors' projects must have been performed in connection with what is essentially a single project performed under a common plan prosecuted with reasonable promptness and *without material abandonment.*

*Calder Bros. Co. v. Anderson,* 652 P.2d 922, 924 (Utah 1982) (emphasis added) (citing *Miller Elec. Co. of Miami, Inc. v. Sweeny,* 199 So.2d 734 (Fla.Dist.Ct.App. 1967); *National Lumber Co. v. Farmer & Son, Inc.,* 251 Minn. 100, 87 N.W.2d 32 (1957); *Fryman v. McGhee,* 108 Ohio App. 501, 163 N.E.2d 63 (1958)). The court, however, did not define the term "material abandonment."

■ The determination of what constitutes material abandonment is a factual issue. *See generally Frank J. Klein & Sons, Inc. v. Laudeman,* 270 Md. 152, 311 A.2d 780 (1973); *Brettschneider v. Wellman,* 230 Minn. 225, 41 N.W.2d 255 (1950).

Other jurisdictions discussing material abandonment focus on whether third parties would have notice that a construction project had commenced and had not been abandoned. *Mack Indust., Inc. v. Donald W. Nelson, Inc.,* 134 So.2d 821 (Fla.Dist.Ct. App.1961) (weeds and grass had grown on the land since the work was done, disguising the work and failing to give notice to third parties); *Dickason Goodman Lumber Co. v. Foresman,* 120 Okla. 168, 251 P. 70 (1926) (found abandonment where basement was constructed and lived in for four years before a bungalow was added to the structure, noting that a home is usually built in one continuous plan).

■ However, the fact that a building project may be temporarily halted does not necessarily mean that an abandonment has occurred. In *Brettschneider v. Wellman,* 230 Minn. 225, 41 N.W.2d 255 (1950), the Minnesota Supreme Court ruled that the excavation of the basement of the building was the commencement of work on the project and that it was one continuous project even though the excavation took place prior to the purchase of the land or

the contract to build and two months before any other work took place. 41 N.W.2d at 260. "Many things might cause a building project to be temporarily halted, but if there is no abandonment or severance of the contract it may still be entire and continuous in nature within the contemplation of the statute." *Id.*

Appellants cite *Frank J. Klein & Sons, Inc. v. Laudeman,* 270 Md. 152, 311 A.2d 780 (1973), as support for the proposition that a cessation of work for several months does not constitute material abandonment. In *Klein,* construction on a nursing home was halted for 15 months because of difficulties in obtaining state approval, bank financing and completion bonds. The court noted that

> by limiting the inquiry to an investigation of whether the work has been interrupted for too long a period, appellants oversimplify the question. The issue more correctly stated is whether there had been sufficient cessation of work to constitute the end of construction on one project and the initiation of work on another.

311 A.2d at 784.

The court stated that in order to determine whether a material abandonment has occurred, an inquiry into intention must be made.

> If the initial desire to complete a project dissipates to such a degree that construction stops with no intention at that time of ever proceeding as originally planned, a mechanics' lien for labor and material provided after a fresh commencement of work on a new project cannot possibly relate back to the commencement of the abandoned structure. This is so because a lien attaches to an individual project and if there is an objective manifestation

of intent that the work on that project should come to a halt, only the construction performed before work ceases pursuant to that intention has a lien priority. *Id.* at 785.

The *Klein* court found that, although there was a significant cessation of work, it was due to reasons not unheard of in construction—loss of financing, failure to get a bond, and state approval—and that there was no evidence of an intention to give up the project. An additional reason the court found no material abandonment was that the project went ahead with little change in the original plans. *Id.* at 786.

■ In summary, what constitutes a "material abandonment" sufficient to prevent relation back of mechanics' liens under section 38–1–5 is a complex inquiry. A court must examine the facts and make findings. A key concern is whether third parties would be on notice that work was continuing or, rather, would believe that work on the initial project had ceased.

In the case before us, the record is not clear when work ceased on the project. The only evidence in the record is the testimony of a Heritage employee who testified that general work on the project ceased for approximately twelve months after the foreclosure. However, five months after the foreclosure, in April of 1983, the property was surveyed and stakes were placed marking the boundaries of the property. The trial judge did not rule on the issue of abandonment below. On the undisputed facts in the record, we cannot say, as a matter of law, that a material abandonment occurred such to prevent appellants' liens from relating back to pre-trust deed work on the Leased and Permit Properties.[16] Thus, we reverse and remand for a

---

**16.** Guaranty also argues that the appellants' liens cannot relate back to the Leased and Permit Property because appellants' work was not "necessary for the convenient use and occupation" of the land as required by Utah Code Ann. § 38–1–4 (1988), which provides:

> The liens granted by this chapter shall extend to and cover so much of the land whereon such building, structure, or improvement shall be made as may be necessary for convenient use and occupation of the land.

The trial court ruled that

> the architects and engineers do have valid lien rights for the work they have done subject to the priority determination as hereinabove made, and that those liens apparently affect the overall project and to the extent that they come subsequent to the phase 1 ruling [foreclosure and sheriff's sale of Fee Property] would be valid liens applying to all of the property of the project.

hearing and the entry of findings on whether there was a material abandonment such to prevent relation back of the appellants' liens to pre-trust deed, on-site work on the Leased and Permit Properties.

## IV. POST–FORECLOSURE, PRE–TRUST DEED, ON–SITE IMPROVEMENTS

■ Appellants finally contend that their liens can relate back to surveying, staking, and soil core sampling work performed on the Leased Property following the November 1982 foreclosure but prior to the recording of the trust deed. Once again, appellants contend that because the work is "lienable," it automatically constitutes "commencement of work" under section 38–1–5. However, the "mere fact that work was a proper subject of a lien cannot establish priority where it does not give notice of commencement." *Clark v. General Elec. Co.*, 243 Ark. 399, 420 S.W.2d 830, 834 (1967).

This court has previously considered the issue of whether surveying work is sufficient to establish relation back under section 38–1–5. In *Tripp v. Vaughn*, 747 P.2d 1051 (Utah Ct.App.1987), the court concluded that the staking, which was the only visible manifestations of the surveyor's work, was not "sufficiently noticeable or related to actual construction to impart notice to a prudent lender." *Id.* at 1055.

In *Aladdin Heating Corp. v. Trustees*, 93 Nev. 257, 563 P.2d 82 (1977), the Nevada Supreme Court refused to relate mechanics' liens back to architectural, survey and soil testing work. In *First of Denver Mortgage Invs. v. C.N. Zundel & Assocs.*, 600 P.2d 521 (Utah 1979), the Utah Supreme Court cited *Aladdin*, and implied that surveying and staking alone was not sufficient for commencement of work under section 38–1–5. *Id.* at 526.

■ Utah's position is consistent with the majority of jurisdictions which have ruled that preparing the soil, leveling the ground, placing survey stakes, and taking soil samples do not constitute "visible" on-site improvements required to establish priority under mechanics' liens statutes. *See Clark*, 420 S.W.2d at 834 (the clearing, grading, and filling of land does not constitute commencement); *Roberts v. First Fed. Sav. & Loan Ass'n*, 222 So.2d 32, 34 (Fla. 1969) (staking does not constitute commencement); *Sheridan, Inc. v. Palchanis*, 172 So.2d 872, 873 (Fla.Dist.Ct.App.1965) (staking to locate improvements does not constitute commencement); *Haines, Jones, Farrell, White, Gima Architects, Ltd. v. Maalaea Land Corp.*, 62 Haw. 13, 608 P.2d 405, 408 (1980) (boundary marking with pins and test borings not a visible improvement); *Gollehon, Schemmer & Assocs., Inc. v. Fairway–Bettendorf Assocs.*, 268 N.W.2d 200, 202 (Iowa 1978) (survey, boundary marking with pins, lathes, marking pipeline and sewer easements do not constitute commencement); *M.E. Kraft Excavating & Grading Co. v. Barac Constr. Co.*, 279 Minn. 278, 156 N.W.2d 748, 753–54 (1968) (preliminary staking does not constitute commencement); *H.B. Deal Constr. Co. v. Labor Discount Center, Inc.*, 418 S.W.2d 940, 952 (Mo.1967) (surveying work to determine boundaries, location of building and excavation do not constitute commencement); *Williams & Works, Inc. v. Springfield Corp.*, 408 Mich. 732, 293 N.W.2d 304, 312 (1980) (soil borings and off-site engineering do not constitute commencement); *North Shaker Boulevard Co. v. Herriman Nat'l Bank*, 22 Ohio App. 487, 153 N.E. 909 (1924) (test holes and staking do not constitute commencement); *Diversified Mortgage Inv. v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 802 (Tex.1978) (staking, surveying, and test holes do not constitute commencement); *Mortgage Assocs., Inc. v. Monona Shores, Inc.*, 47 Wis.2d 171, 177

Guaranty did not file a cross appeal on the issue of whether the entire project was affected by the appellants' work. Thus, we affirm the trial court's finding that the appellants' work benefited the entire parcel of land. The liens

for work performed on the Leased and Permit Property would, if otherwise valid and not precluded by abandonment, take priority over the trust deed.

N.W.2d 340, 350–51 (1970) (stakes to lay out streets and cutting and filling levels do not constitute commencement).[17]

Based on the authority discussed, we conclude there was no post-foreclosure, pre-trust deed work sufficient to qualify for commencement of work because surveying, staking, and soil testing do not constitute a visible on-site improvement as required by Utah law for relation back under sections 38–1–5 and –10.

## CONCLUSION

Off-site preliminary architectural work, while it is lienable work against the property owner, does not constitute commencement of work for priority purposes under section 38–1–5. Therefore, the appellants must relate their work back to other visible, on-site, pre-trust deed work in order to establish their lien priority over Guaranty's trust deed.

The post-foreclosure, pre-trust deed surveying, staking, and soil testing work does not qualify as commencement of work under section 38–1–5.

The November 1982 foreclosure on the Fee Property extinguished all unrecorded liens on that property including mechanics' liens. Therefore, work performed on that property prior to the foreclosure cannot be the basis for relation back for mechanics' lien priority purposes. However, the foreclosure does not extinguish the liens on the Leased and Permit Properties.

The trial court did not rule on the issue of whether there was a material abandonment of the project which would require a recommencement of work to establish lien priority on the Leased and Permit Property. This court cannot on the record before us find as a matter of law that there was or was not a material abandonment, there-

fore, this issue is remanded to the trial court for determination.

BENCH and GREENWOOD, JJ., concur.

---

17. Colorado and Oklahoma are once again exceptions to the general rule. *See Weather Eng'g & Mfg., Inc. v. Pinon Springs Condominiums, Inc.,* 192 Colo. 495, 563 P.2d 346, 348–49 (1977) (survey and staking constituted commencement of the work on the structure or improvement for the purpose of determining the date to which the mechanics' liens related back); *Midland Mortgage Co. v. Sanders England Invs.,* 682 P.2d 748, 749–50 (Okla.1984) (surveying by an engineering firm constituted improvement and, if the work was done prior to the recordation of the mortgage, it constituted a superior lien).