**NU–TREND ELECTRIC, INC.,
Plaintiff and Appellant,**

**Croft Floors, Inc., and Carter W. Bangerter Masonry, Plaintiffs in Intervention and Appellants,**

v.

**DESERET FEDERAL SAVINGS AND LOAN ASSOCIATION, INC.; Franklin Johnson; and John Does 1 through 5, Defendants and Respondents.**

No. 890042–CA.

Court of Appeals of Utah,

Jan. 8, 1990.

Neil B. Crist, Bountiful, for plaintiffs and appellants.

Joseph E. Hatch, Michael A. Katz, Salt Lake City, for defendant and respondent Deseret Federal.

Before GREENWOOD and JACKSON, JJ., and BULLOCK,[1] Senior District Judge.

**J. ROBERT BULLOCK, Senior District Judge:**

This is a suit to foreclose certain mechanics' liens. The district court held that the priority of plaintiffs' mechanics' liens did not relate back to earlier work. Plaintiffs appeal, and we affirm.

Deseret Federal Savings and Loan Association loaned funds to Maple Hills Development, Inc., to finance construction of a condominium project, and secured its loan by a trust deed recorded on March 4, 1981. In September 1981, Nu–Trend Electric, Inc. began installing electrical wiring in two units that were to be sold to Franklin Johnson. Nu–Trend discontinued its work in May 1982. It recorded notice of a mechanic's lien on June 28, 1982, and commenced this suit to foreclose that lien on September 28, 1982.

The trustee of the Deseret Federal trust deed covering the project, including the two Johnson units, recorded notice of default on November 5, 1982, and notified Nu–Trend accordingly. The default was not cured, and a trustee's sale was held on March 14, 1983, at which Deseret Federal, the only bidder, purchased the Johnson units.

After the default in the construction financing, work on the interior of the Johnson units ceased for about three years. Some work was done during that period on the exterior facilities of the condominium project at the behest of Deseret Federal, the condominium owners association, or both. The exterior work consisted mainly of grading, cement finishing, sprinkling system installation, and general maintenance. Work on the interior of the Johnson units did not resume until after June 13, 1985, when they were sold to David and Victor Kimball, who borrowed the purchase money from Deseret Federal. Kimballs hold the property in a representative capacity for Johnson, but the details of that relation are not in the record. Nu–Trend resumed work after the Kimball purchase, under a new general contractor but using the same plans as previously. Also after the Kimball purchase, the intervening plaintiffs, Croft Floors, Inc. and Carter W. Bangerter Masonry, laid a floor and constructed a retaining wall, respectively.

Neither Nu–Trend, Croft, nor Bangerter were fully paid for their work, and they filed notices of lien in 1987. Deseret Federal's loan to the Kimballs also went into default, and it began foreclosure proceedings on the trust deed of June 13, 1985. Nu–Trend thereupon moved to stay the foreclosure by Deseret Federal, and Croft and Bangerter intervened as plaintiffs. Deseret Federal countered with a motion to dismiss the complaint. After an evidentia-

1. J. Robert Bullock, Senior District Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1989).

ry hearing, the district court denied the lienors' motions to stay the foreclosure and granted Deseret Federal's motion to dismiss. The suit against the defendants other than Deseret Federal was then dismissed on plaintiffs-lienors' motion, and the lienors appealed.

The lienors argue that their liens relate back to a time earlier than the 1985 trust deed from the Kimballs; specifically either to the work they performed in 1981, when Nu–Trend began wiring the Johnson units, or to the fall of 1984, when work on the exterior of the condominiums was performed. By relation back to either time, their liens are said to antedate Deseret Federal's 1985 trust deed from the Kimballs, and thereby give the lienors priority superior to Deseret Federal. We, however, hold to the contrary, based on the district court's findings that the work commenced in 1981 was materially abandoned and that the exterior work of 1984 was not part of the same project.

### Material Abandonment of 1981 Work

 While it is true that the priority of a mechanic's lien dates from when work on the construction project commenced,[2] we disagree that the work resumed in 1985 relates back to the 1981–82 work. For the priority of a mechanic's lien to relate back to the commencement of the work, the work must be performed "without material abandonment." *Calder Bros. Co. v. Anderson*, 652 P.2d 922, 924 (Utah 1982). The question is primarily one of notice; a construction project has been materially abandoned when a reasonable observer of the site would be on notice that the persons who performed the work apparently do not intend to continue it to completion. *Ketchum, Konkel, Barrett, Nickel & Austin v. Heritage Mountain Dev. Co.*, 123 Utah Adv. Rep. 23, 27–28 (Utah App.1989).

The trial court found that the cessation of work on the interior of the Johnson units between March 1983 and June 1985 was a material abandonment of the construction project for which the 1982 lien was filed. The question of whether a construction project has been materially abandoned for mechanic's lien purposes is a question of fact,[3] and appellate review of the district court's determination of such a factual issue is strictly limited. In reviewing a factual determination, we defer to the decision of the trial court, unless the appellant marshalls all of the relevant evidence and shows the findings to be clearly erroneous.[4] The lienors have not marshalled evidence to show that Nu–Trend manifested any intention inconsistent with abandonment when it stopped work in 1982. We therefore conclude that the liens do not relate back to the work begun in 1981.

### Separate Projects

The lienors similarly assert that their work relates back to the 1984 work performed on the exterior and common areas of the condominium project. Deseret Federal replies that the 1984 work was a project separate from the work on the interior of the Johnson/Kimball units.

 For priority of a mechanic's lien to relate back to the beginning of the work for which the lien is claimed, the work must all be part of the same project; in other words, the work must have a continuity of purpose such that a reasonable observer of the site would be on notice that work was underway for which a lien could be claimed. *See Duckett v. Olsen*, 699 P.2d 734 (Utah 1985); *Western Mortgage Loan Corp. v. Cottonwood Const. Co.*, 18 Utah 2d 409, 424 P.2d 437 (1967); *Rotta v. Hawk*, 756 P.2d 713, 715 (Utah App.1988); *Tripp v. Vaughn*, 747 P.2d 1051 (Utah App.1987).

As with material abandonment, the question whether work is for the same project

---

**2.** *See* Utah Code Ann. § 38–1–5 (1988).

**3.** *Ketchum*, 123 Utah Adv. Rep. at 27.

**4.** Utah R.Civ.P. 52(a); *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989).

as previously is a question of fact,[5] and the lienors have not marshalled evidence to demonstrate that the district court's finding on this question is clearly erroneous.

### Attorney Fees

The district court awarded attorney fees to Deseret Federal, an award which is not questioned on appeal, and Deseret Federal seeks a similar award of the fees it incurred on appeal. Utah Code Ann. § 38–1–18 (1988) enables a court to award attorney fees to the successful party in a case brought to enforce a mechanic's lien. Cases interpreting that statute have construed it narrowly; however, the complaint in this case makes clear that this is a suit "to enforce a lien,"[6] because it seeks not merely a priority determination but also an order of foreclosure and a sheriff's sale under the lien. Deseret Federal is therefore awarded attorney fees reasonable in amount for services rendered in the appeal of this case.

The judgment of the district court is affirmed, and the case reasonably is remanded for determination of the amount of attorney fees reasonably incurred on appeal.

GREENWOOD and JACKSON, JJ., concur.

**5.** *Duckett,* 699 P.2d at 736; *Boise Cascade Corp. v. Stephens,* 572 P.2d 1380 (Utah 1977).

**6.** *See Rotta v. Hawk,* 756 P.2d 713, 716 (Utah App.1988).